# IN THE SUPREME COURT OF IOWA

No. 12–0608

Filed January 4, 2013

**IN THE INTEREST OF A.K., Minor Child**

**A.K.,** Minor Child,

     Appellant.

---

Appeal from the Iowa District Court for Lyon County, Robert J. Dull, District Associate Judge.

Juvenile appeals from his adjudication as a delinquent. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Michael J. Jacobsma and Missy J. Clabaugh of Jacobsma & Clabaugh PLC, Sioux Center, for appellant.

Thomas J. Miller, Attorney General, Bruce L. Kempkes, Assistant Attorney General, and Carl J. Petersen, County Attorney, for appellee.

**HECHT, Justice.**

A juvenile accused of sexually abusing and assaulting three children appeals from his delinquency adjudication. He contends the juvenile court should have excluded evidence of a prior bad act and that there was insufficient evidence to support the findings that he committed the delinquent acts. Upon our de novo review, we affirm the juvenile adjudication as to six of the seven counts of delinquency and reverse as to one count.

## I. Background Facts and Proceedings.

In August and September 2011, two petitions were filed alleging fifteen-year-old A.K. was a delinquent child pursuant to Iowa Code chapter 232 for committing a total of three counts of sexual abuse in the second degree and four counts of assault with intent to commit sexual abuse involving three different victims.[1] A.K. denied the charges, and an adjudicatory hearing was held in January 2012.

At the adjudicatory hearing, D.E.[2] testified regarding events that happened on the night of July 1, 2011: That night, he walked to the figure eight races at the county fairgrounds with his sisters and some friends.[3] A.K. pulled up in a white car and offered to give them a ride, and the group accepted. After arriving at the races, the group split up, but later A.K. approached D.E. and asked him if he wanted to play truth

---

[1]File No. JVJV500105 alleged A.K. committed three acts which would constitute sexual abuse in the second degree against D.E. and one act which would constitute assault with intent to commit sexual abuse against J.E. File No. JVJV500109 alleged A.K. committed three acts which would constitute assault with intent to commit sexual abuse against K.D.

[2]D.E. was eight years old when the alleged abuse occurred, but was nine by the time of the adjudicatory hearing.

[3]Although D.E. and the other children were not sure of the date of the incident, police were able to narrow down the time frame to July 1 based on A.K.'s phone records and the racing schedule.

or dare.  A.K. and D.E. got into A.K.'s parked car, and A.K. touched him "inappropriately."  After the races ended, A.K. offered to drive D.E. to a farm to look at the animals and obtained permission from D.E.'s older sister.  A.K. drove D.E. to a remote location, and they got into the back seat.  A.K. pulled down his pants and removed D.E.'s pants.  A.K. lifted D.E. onto his lap and touched his penis to D.E.'s anus.  He also rubbed D.E.'s penis with his hand, and put D.E.'s penis in his mouth.  A.K. then took D.E. back to town to meet his sister.  D.E. did not tell anyone about the incident until several days later.

D.E.'s twin sister, J.E., also testified.  She corroborated D.E.'s testimony about riding to the races with A.K. and about D.E. leaving with A.K. both during and after the races.  She also testified that later in the summer, A.K. asked her if she wanted to ride her bike out to Blue Scout Island with him.  She agreed.  They entered an old burned-out house, and A.K. dared her to pull her pants down.  She did.  He looked at her and then she pulled her pants up and she left.  He neither touched her nor moved toward her.  She waited to tell anyone about the incident until several days later.

D.E. and J.E.'s older sister testified about the night of the races and corroborated that D.E. and A.K. disappeared during the races and were found together in A.K.'s car.  She also corroborated that A.K. left with D.E. in his car after the races to go to the farm.  All three children described the interior of A.K.'s car in specific detail, including the fact that the steering wheel was covered in tape because A.K. told them the air bag had been set off.

K.D.[4] testified that A.K. was friends with his brother and sometimes came to his house along with other friends to watch TV after

---

[4]K.D. was eleven years old at the time of the incident and at the time of trial.

school. On three occasions during the summer of 2011, A.K. tickled him, and the horseplay escalated as A.K. rubbed K.D.'s penis through his pants for about twenty minutes. K.D. testified that he did not tell anyone about the incidents because he was embarrassed. He acknowledged that his brother and another friend were in the room when the incidents took place but that they did not seem to notice anything.

A.K. did not testify but introduced testimony from his mother, father, and sister that the car described by the children was inoperable and parked in South Dakota at his father's apartment on July 1, 2011. A neighbor and an acquaintance testified that they recalled seeing A.K. on a bicycle on the evening of July 1. Some other children who had been at K.D.'s house on the days in question testified that roughhousing was common and that they did not see A.K. rubbing K.D.'s penis. A.K. also introduced evidence tending to show that D.E. and J.E. had changed elements of their stories when they had talked to friends, members of law enforcement, and a counselor.

The juvenile court adjudicated A.K. a delinquent on all seven counts. A.K. appealed. He contends the district court erred in allowing evidence of a prior bad act admitted by A.K. to an investigating officer. He also contends there was insufficient evidence to support the adjudication.

## II. Scope of Review.

Delinquency proceedings are special proceedings that serve as an alternative to the criminal prosecution of a child. *In re J.A.L.*, 694 N.W.2d 748, 751 (Iowa 2005). The objective of the proceedings is the best interests of the child. *Id.* We review delinquency proceedings de novo. *Id.* Although we give weight to the factual findings of the juvenile court, especially regarding the credibility of witnesses, we are not bound

by them. *In re J.D.F.*, 553 N.W.2d 585, 587 (Iowa 1996). We presume the child is innocent of the charges, and the State has the burden of proving beyond a reasonable doubt that the juvenile committed the delinquent acts. Iowa Code § 232.47(10) (2011). Our review of the juvenile court's admission of other-acts evidence is for an abuse of discretion. *J.A.L.*, 694 N.W.2d at 751.

The State argues that our de novo standard of review of the sufficiency of the evidence for juvenile adjudications is inappropriate and unwarranted by Iowa Code chapter 232. The State contends that although our caselaw has long held that our review is de novo and that we consider the facts anew to determine whether the State has met its burden to prove the child engaged in acts of delinquency, the statute has not supported such review since 1965 and urges us to adopt a standard of review identical to the review we conduct in criminal cases. Such a standard would require us to determine whether, viewing the light in the evidence most favorable to the State, any reasonable fact finder could have found beyond a reasonable doubt that the juvenile committed the delinquent acts. *See State v. Bash*, 670 N.W.2d 135, 137 (Iowa 2003).

As the State describes, before 1965, proceedings under chapter 232 were "in equity." Iowa Code § 232.13 (1962). Thus our review on appeal was de novo, as it is in all equity cases. *See* Iowa R. App. P. 6.907. However, chapter 232 was substantially revised in 1965, and the provision expressly requiring delinquency proceedings to be tried in equity was removed. *Compare* Iowa Code § 232.13 (1962), *with* Iowa Code § 232.58 (1966). In its place was the directive that "an interested party . . . may appeal to the supreme court for review of questions of law and fact." *Id.* § 232.58 (1966). Identical language is still in effect in section 232.133(1) (2011). However, in cases following the revision of

chapter 232, we continued to assert that our review was de novo without acknowledging that particular change in the statutory language. *See, e.g., In re Henderson*, 199 N.W.2d 111, 116 (Iowa 1972). Instead, we cited to the old rule of appellate procedure which indicated that our review of equity cases was de novo. *Id.*

The State points out that other states and federal jurisdictions apply the same standard of review to sufficiency-of-the-evidence claims in juvenile cases as in criminal cases. These other jurisdictions have reasoned that because the State has the same "beyond a reasonable doubt" burden in both juvenile and adult criminal proceedings, the standards and scope of appellate review should also be the same in juvenile and criminal proceedings. *See United States v. DeLeon*, 768 F.2d 629, 631 (5th Cir. 1985) (concluding standard of review of federal juvenile adjudication is whether, viewing evidence in light most favorable to the government, a reasonable fact finder could have found beyond a reasonable doubt the juvenile committed the alleged act); *In re Jose D.R.*, 186 Cal. Rptr. 898, 901 (Ct. App. 1982) (holding standard of review in juvenile adjudications is same as in criminal convictions because standard of proof below is identical in the two proceedings); *In re W.C.*, 657 N.E.2d 908, 923 (Ill. 1995) (holding the standard of review in juvenile adjudication is whether, after viewing evidence in light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt); *J.D.P. v. State*, 857 N.E.2d 1000, 1010 (Ind. Ct. App. 2006) (holding that in reviewing sufficiency of evidence in juvenile adjudication the appellate court considers the evidence most favorable to the judgment and the reasonable inferences drawn therefrom and affirms if those inferences constitute substantial evidence); *In re A.D.*, 771 A.2d 45, 48 (Pa. Super.

Ct. 2001) (holding review of sufficiency of evidence of juvenile adjudication is same as reviewing substantial evidence to support a criminal conviction).

While the State accurately describes the changes to chapter 232 in 1965, we do not think the revision requires a change in our standard of review. The revised language provides that an interested party may appeal "for review of questions of law and fact." Iowa Code § 232.133(1). This language is compatible with our framework of de novo review which in other contexts requires this court to review the "*facts* as well as the *law* [to] determine from the credible evidence [the parties'] rights anew." *State ex rel. Turner v. Younker Bros., Inc.*, 210 N.W.2d 550, 567 (Iowa 1973) (emphasis added); *see also In re Marriage of Winegard*, 257 N.W.2d 609, 613 (Iowa 1977). Further, we have continued to assert that juvenile proceedings are in equity and subject to de novo review for more than forty years since the amendments identified by the State. Certainly if the legislature had intended such a dramatic change in the scope of our appellate review in juvenile proceedings, it would have seen fit to more explicitly revise the statute to correct our misunderstanding at some point during the last four decades.

Although the State contends there is "no legitimate reason or policy" supporting the application of different standards of review in juvenile adjudications and adult criminal convictions, juvenile delinquency proceedings are different in significant ways from adult criminal proceedings. The primary goal of juvenile proceedings is to further the best interests of the child—not to punish but instead to help and educate the child. *See* Iowa Code § 232.1; *Henderson*, 199 N.W.2d at 119. The State has not explained how a change in our standard of review would promote the best interests of the juvenile. Notably, none of

the cases from other jurisdictions cited by the State address this issue. The rationale offered by the other courts focuses solely on the similar burden placed on the State in both types of proceedings.

We note that de novo review of the evidence may promote efficiency when there is an evidentiary error below because we can review the evidence anew, without considering the inadmissible evidence, to determine whether the State has proven the child committed the acts beyond a reasonable doubt. *See J.A.L.*, 694 N.W.2d at 753. If we applied the more deferential review urged by the State, we would have to remand for a new trial when evidentiary error was not harmless and keep the child in limbo longer.

Further, juvenile proceedings differ from criminal proceedings in another important respect. Neither statutory nor constitutional provisions guarantee juveniles the right to a jury trial. *See* Iowa Code § 232.47(2); *McKeiver v. Pennsylvania*, 403 U.S. 528, 533, 545–47, 91 S. Ct. 1976, 1980, 1986–87, 29 L. Ed. 2d 647, 654, 661–62 (1971); *In re Johnson*, 257 N.W.2d 47, 50–51 (Iowa 1977). This important distinction between adult and juvenile proceedings favors a more in-depth appellate review of the facts supporting and opposing an adjudication.

Some fear that because of the unique nature of juvenile proceedings, juveniles will often "receive[] the worst of both worlds . . . get[ting] neither the protections accorded to adults nor the solicitous care and regenerative treatment postulated for children." *Kent v. United States*, 383 U.S. 541, 556, 86 S. Ct. 1045, 1054, 16 L. Ed. 2d 84, 94 (1966). Others have argued that the lack of a right to jury trial renders juvenile proceedings especially vulnerable to inaccurate fact finding and unfair resolutions because they are presided over by a single judge. Martin Guggenheim & Randy Hertz, *Reflections on Judges, Juries, and*

*Justice: Ensuring the Fairness of Juvenile Delinquency Trials*, 33 Wake Forest L. Rev. 553, 576–77, 593 (1998) [hereinafter Guggenheim]. Although de novo appellate review may not provide the same measure of protection that a jury trial would, we see no reason to abandon it lightly, especially given that we do not think it mandated by statute.[5]

Given these considerations, we decline to change our standard of review of the sufficiency of the evidence supporting a juvenile adjudication.

**III. Discussion.**

**A. Prior Acts Evidence.**    During the testimony of Detective Birkey, who had interviewed A.K. regarding the allegations, this exchange took place:

> Q: Okay.  And after you asked that did [A.K.'s father] or A.K. volunteer that he had touched a five-year-old child inappropriately in Sioux Falls?
>
> MR. JACOBSMA: Objection.  Relevance.
>
> MR. PETERSON: It goes to intent, Your Honor.  It's my perception that the defense counsel, especially in [K.D.'s] case, is alleging that this was roughhousing and had no sexual intent.  Part of the intent is specific intent to commit a sexual assault.
>
> THE COURT: The objection's overruled.  You may answer the question.

---

[5]Studies have shown that a defendant is more likely to be found guilty after a bench trial than a jury trial.  Guggenheim, 33 Wake Forest L. Rev. at 562–63.  While these studies cannot discern who is "right" in the situations where the fact finders disagree as to guilt, scholars have offered suggestions explaining why judges are more likely to vote for conviction than are juries.  Of primary concern is that judges are routinely exposed to inadmissible, prejudicial, extra-record evidence, particularly in juvenile cases.  *Id.* at 571.  Often this evidence (such as a confession obtained in violation of the juvenile's constitutional rights) will suggest, if not downright prove, that the juvenile committed the alleged act.  *Id.* at 571–72.  Although appellate courts "indulge in a fiction that a trial judge is capable of putting inadmissible information out of her mind[,] . . . empirical evidence suggests, and some judges have forthrightly acknowledged, such highly prejudicial information inevitably affects a judge, even if only at a subconscious level."  *Id.* at 572 (footnotes omitted).

THE WITNESS: I asked him if he had ever touched anyone inappropriately, and he said, "No, no, actually--" then he stopped, and I said, "never." And he said, "Well, yeah, once." And he told me he had touched the vagina of a five-year-old girl in Sioux Falls. According to police reports I already had, I believe she was four at the time.

MR. PETERSON: And so you were aware of this incident in Sioux Falls, South Dakota?

THE WITNESS: Yeah, I was.

In this appeal, A.K. contends this testimony should have been excluded pursuant to Iowa Rule of Evidence 5.404(*b*) as evidence of a prior bad act. However, the only ground urged for exclusion at trial was relevance, which is not relied on in the appeal. The State contends this general "relevance" objection was insufficient to preserve error on 5.404(*b*) grounds and notes that A.K. has abandoned his relevancy objection on appeal. We need not decide whether error was preserved on this issue or whether, if preserved, the "other acts" evidence was admissible, however, because the evidence challenged by A.K. does not affect the outcome of our decision on de novo review as to the sufficiency of the evidence supporting any of the seven counts of delinquency alleged in this case.

**B. Sufficiency of the Evidence.** A.K. was charged with seven separate delinquent acts. With regard to the three alleged offenses involving D.E., A.K. was charged with committing acts that would have violated Iowa Code section 709.3, sexual abuse in the second degree. Specifically this meant that the State had to show that A.K. committed sexual abuse against a person who was under the age of twelve. Iowa Code § 709.3(2). Sexual abuse is defined as "any sex act" with another person who is a child. *Id.* § 709.1(3). A "sex act" does not necessarily require skin to skin contact. *State v. Pearson,* 514 N.W.2d 452, 455

(Iowa 1994). Thus it was the State's burden to prove A.K. committed three different sex acts with D.E.

Our de novo review of the evidence convinces us that the State has proven beyond a reasonable doubt that A.K. committed three acts of sexual abuse against D.E. D.E. testified that A.K. sucked on his penis; rubbed his penis; and that he placed D.E., nude, on top of his naked groin and that A.K.'s penis touched D.E.'s anus. These are clearly sex acts. Although counsel for A.K. was able to identify several variances in D.E.'s accounts given to different people before trial, we do not find the variances to be significant or destructive to the eight-year-old's credibility. We further note that D.E.'s clear and accurate description of the interior of A.K.'s car adds significantly to his credibility. Although A.K. offered the testimony of his sister and others to establish that the car D.E. and the other children described was inoperable and was parked in another state at the time of the alleged abuse, we, as did the juvenile court, find the testimony of D.E. and the other children more credible than the testimony of A.K.'s witnesses. Accordingly, we affirm the juvenile court's determination that A.K. committed delinquent acts that would constitute three violations of section 709.3(2) if he were an adult.

Similarly, regarding the allegations involving K.D., we conclude the State has proven beyond a reasonable doubt that A.K. committed three acts which would constitute assaults with intent to commit sexual abuse in violation of section 709.11. As to each of these offenses, the State must prove that A.K. committed an assault, as defined in section 708.1, with the intent to commit sexual abuse. Assault is defined, in relevant part, as any of the following:

1. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.

2. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, couple with the apparent ability to execute the act.

Iowa Code § 708.1(1)–(2).

K.D.'s testimony was uncontroverted that A.K. engaged in horseplay with K.D. which escalated into A.K. rubbing K.D.'s penis through his pants for extended periods of time on three different occasions. On at least one occasion, K.D. told A.K. to stop, and A.K. did not. Although A.K. solicited testimony from other boys who were present on one or more of the occasions and who did not observe the rubbing, the boys corroborated that A.K. had been at the house during the relevant time frame and that A.K. had wrestled or engaged in horseplay with K.D. K.D. testified that he did not like to be touched that way by A.K. and he found it embarrassing. We find K.D.'s testimony more credible than the testimony opposing it. The State proved beyond a reasonable doubt that A.K. committed three acts of assault with intent to commit sexual abuse against K.D.

However, we find the State has not met its burden to prove A.K. committed an assault against J.E. as the crime is defined under Iowa Code section 708.1(1) and (2). J.E.'s uncontroverted testimony was that after she willingly accompanied A.K. to the abandoned house, A.K. dared her to pull down her pants. She complied at first but after a few moments pulled up her pants and ran away. J.E. testified that A.K. was across the room from her when he spoke to her. A.K. did not touch her, move toward her, or make any verbal utterance threatening her with physical contact. We cannot conclude beyond a reasonable doubt on

this record that A.K. assaulted J.E.  Accordingly, we reverse the juvenile court's adjudication of A.K. as to this count.

**IV.  Conclusion.**

For the reasons stated above, we affirm the juvenile court's adjudication of A.K. as a delinquent as alleged in counts I, II, and III of File No. JVJV500105 (D.E.) and counts I, II, and III of File No. JVJV500109 (K.D.).  We reverse the juvenile court's adjudication of A.K. as a delinquent as to count IV of File No. JVJV500105 (J.E.).

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**