**IN THE COURT OF APPEALS OF IOWA**

No. 15-1083
Filed February 10, 2016

**IN THE INTEREST OF C.M.,**
**Minor Child,**

**C.M., Minor Child,**
    Appellant.

_____

Appeal from the Iowa District Court for Dubuque County, Thomas J.

Straka, Associate Juvenile Judge.

A juvenile accused of robbery appeals from his delinquency adjudication.

**REVERSED.**

Sharon D. Hallstoos, Dubuque, for appellant.

Thomas J. Miller, Attorney General, and Bruce Kempkes, Assistant

Attorney General, for appellee.

Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**DANILSON, Chief Judge.**

A juvenile accused of robbery in the second degree appeals from his delinquency adjudication. He contends there was insufficient evidence to support the findings that he aided or abetted the commission of the delinquent act. We agree and therefore reverse.

> Delinquency proceedings are special proceedings that serve as an alternative to the criminal prosecution of a child. The objective of the proceedings is the best interests of the child. We review delinquency proceedings de novo. Although we give weight to the factual findings of the juvenile court, especially regarding the credibility of witnesses, we are not bound by them. We presume the child is innocent of the charges, and the State has the burden of proving beyond a reasonable doubt that the juvenile committed the delinquent acts.

*In re A.K.*, 825 N.W.2d 46, 49 (Iowa 2013) (citations omitted).

On our de novo review, we find the following. On January 9, 2015, teenagers DeAngela and Cassandra rode the city bus and disembarked near a drug store, which is apparently used as a warming area for students transferring to another bus. DeAngela went into the drug store to see if her mother was working that day. DeAngela was asked for money repeatedly by two other students she recognized from her school, Davion and Charielle. C.M. was in the vicinity. When DeAngela declined, Davion pulled her from the store by her back pack, took the pack from her, and removed her wallet, which he handed to Charielle. Charielle removed five dollars from DeAngela's wallet and then threw the wallet on the ground. At the adjudication hearing, DeAngela testified Charielle and Davion had asked her for money on prior occasions, and that Charielle had taken money from her before. When asked if C.M. had asked her

for money or bothered her before, DeAngela said "No." She testified further on cross-examination:

> Q. On the date in question, on January 9, when you were—when you came into contact with [C.M.], was he behaving threatening to you? A. No, ma'am.
> Q. Did he take money out of your wallet? A. No, ma'am.
> Q. And when the police came to the scene, w[ere] [Charielle] and [Davion] present? A. No, ma'am.
> Q. Did [C.M.] encourage—did he tell Charielle to take money from your wallet? A. No, ma'am.
> Q. Did [C.M.] ask Charielle to share any money that she took form your wallet? A. That I don't know.
> Q. Also, earlier, you said that [C.M.] did not ask you for money. A. No, ma'am.
> Q. And [C.M.] did not grab you or push you out of Hartig's store? A. No, ma'am.
> Q. You did say that—well, did [C.M.] remove your bag? A. He was there when it happened.
> Q. He was there when it happened? A. Yes, ma'am.
> Q. Did he put his hands on your bag to remove your bag? A. No.
> Q. And to your knowledge, did he—did he root on for that to happen? Did he say, 'Go on, take her money, take her bag,' to your knowledge? A. No, ma'am.

DeAngela testified C.M. did not stop Davion and Charielle from taking her money.

DeAngela's friend, Cassandra, testified similarly on direct examination that Davion and Charielle were the two who pushed DeAngela out the door and took her money. Cassandra stated she attempted to help DeAngela, but Charielle held her back. When asked about C.M.'s participation, Cassandra stated C.M. was "near them." On cross-examination, Cassandra testified C.M. did not encourage Davion and Charielle, rather "he just stood there." She also stated that though there were several others in the drug store, no one else did anything to prevent Charielle from taking DeAngela's money.

The juvenile court found C.M. aided and abetted Charielle and Davion in the robbery of DeAngela, concluding:

> Although [C.M.] may not have been the one to physically remove DeAngela from the store or physically remove her back pack and money, the record contains substantial evidence to show that [he] assented to or lent countenance and approval to the criminal act. . . .
>     17. Although a defendant's mere presence is insufficient to support a conviction on a theory of aiding and abetting, the requisite participation can be inferred from circumstantial evidence, including presence, companionship, and conduct before and after the offense is committed. . . . DeAngela testified that [C.M.] helped remove her back pack and that she was certain all three subjects were involved.
>     18. Additionally, [C.M.] testified that he heard Charielle and Davion requesting money from DeAngela. At no point did he intervene to stop the requests, nor did he at any point attempt to stop the attack on DeAngela. During the subsequent investigation he was not truthful as to his involvement[1] when interviewed by Officer Beck.

Pursuant to Iowa Code section 232.2(12)(a) (2015), a delinquent act means "[t]he violation of any state law or local ordinance which would constitute a public offense if committed by an adult." Iowa Code section 711.1(1)(a) provides:

> A person commits a robbery when, having the intent to commit a theft, the person does any of the following acts to assist or further the commission of the intended theft or the person's escape from the scene thereof with or without the stolen property:
>     (a) Commits an assault upon another.

Section 703.1 provides:

> All persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense or aid and abet its commission, shall be charged, tried and punished as principals. The guilt of a person who aids and abets the commission of a crime must be determined upon the facts which

---

[1] C.M. had denied having seen Davion and Charielle when questioned by an officer.

show the part the person had in it, and does not depend upon the degree of another person's guilt.

C.M. argues the fact that he did not do anything to stop or prevent the robbery is insufficient to convict him of the crime of aiding and/or abetting the commission of a robbery. We again quote the testimony from the adjudication hearing. DeAngela testified on direct examination:

> Q. Okay. So they removed the back pack from your person?
> A. From my back, yes.
> Q. How did that happen? A. They were like pulling me, trying to get it off.
> Q. Who was doing that? A. Davion.
> Q. Was [C.M.] involved in that part of it? A. He was there, but like he really didn't do anything.
> Q. Did all three of them push you out of the store? A. No, just Davion.
> Q. Okay. What happened after the back pack was removed? A. They removed my wallet, and that was it.
> Q. When you say they went through your wallet, who was that? A. Charielle.
> Q. Did the boys do anything? A. One of them still had my bag, but—
> Q. Do you recall who it was? A. Davion.
> Q. What was [C.M.] doing? A. He was with him the whole time?
> Q. Did he help him remove the bag? A. Yes.

The trial court relied upon this last "yes" as evidence that "all three subjects were involved."

We are not persuaded this single response, which contradicts both DeAngela and Cassandra's numerous statements that C.M. did nothing except be present, supports a finding that C.M. committed second-degree robbery. *See Heick v. Bacon*, 561 N.W.2d 45, 53 (Iowa 1997) (finding insufficient evidence that a person aided and abetted another's tortious drunk driving and noting "[t]he fact

that she made no effort to prevent his unlawful conduct is not—standing alone— aiding and abetting"). As recently stated:

> Aiding and abetting occurs when a person *actively participates or in some manner encourages* the commission of a crime prior to or at the time of its commission. Knowledge of the crime is insufficient in and of itself to prove aiding and abetting. Likewise, presence at the scene of the crime, without more, is not enough to uphold a finding of guilty by aiding and abetting.

*State v. Maxwell*, 743 N.W.2d 185, 197 (Iowa 2008) (emphasis added) (citations omitted). This record does not establish beyond a reasonable doubt C.M. actively participated or in some manner encouraged the robbery. We acknowledge that a person's requisite participation can be inferred from circumstantial evidence and conduct after the offense is committed. *See State v. Miles*, 346 N.W.2d 517, 520 (Iowa 1984) (noting defendant "took up the struggle for the purse" after another woman fled leaving the purse behind in which three dresses were placed, and insisted she had ample money to pay for the dresses though her purse contained only three dollars). The trial court rejected C.M.'s testimony that he did not know that Charielle and Davion were going to attack DeAngela based on C.M.'s "lack of candor during the interview with Officer Beck." But the evidence of active participation or encouragement is lacking nonetheless. Even evidence that C.M. walked into the store with Davion and Charielle is insufficient to show proof beyond a reasonable doubt. We therefore reverse.

**REVERSED.**