**IN THE COURT OF APPEALS OF IOWA**

No. 15-1846
Filed September 28, 2016

**IN THE INTEREST OF T.B.,**

**T.B.,**
        Appellant.
_____


        Appeal from the Iowa District Court for Webster County, Angela L. Doyle, District Associate Judge.


        A child appeals the juvenile court's determination he committed the delinquent acts of attempted murder, intimidation with a dangerous weapon, and going armed with intent.  **AFFIRMED.**


        Douglas E. Cook of Cook Law Office, Jewell, for appellant.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.


        Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**TABOR, Judge.**

The question in this appeal is whether twelve-year-old T.B. was the person who fired three shots from a semi-automatic nine-millimeter pistol into the car occupied by twenty-one-year-old Joey Guillen and fifteen-year-old B.H., injuring both occupants. The juvenile court found Guillen credible in his identification of T.B. as the shooter. Accepting the juvenile court's credibility finding, we affirm the delinquency adjudication.

The juvenile court found the following facts. Guillen was "hanging out" with his girlfriend's brother, B.H., at a skate park in Fort Dodge in the early morning hours of June 9, 2015. While there, Guillen received a phone call from Thomas Meeks, whom Guillen knew through their involvement in the sale of illegal drugs. With B.H. as his passenger, Guillen drove his 1998 Oldsmobile Intrigue to meet Meeks at a residential address. When Guillen parked in front of that address, which was the residence of T.B.'s mother, his car was approached by three youths: seventeen-year-old J.C., twelve-year-old I.M. and T.B.[1] J.C. and I.M. came up to Guillen's window, while T.B. lingered farther back on the driver's side by the car's gas tank. J.C. was holding a plate of food and ate while conversing with Guillen.

B.H. testified I.M. "asked [Guillen] if he had somebody's money." And Guillen replied: "I ain't paying you nothing." At this point, Guillen recalled seeing T.B. holding a gun in his right hand against his right thigh. When Guillen noticed the gun, he "put [his] head down and hit the gas" trying to get away as quickly as possible. He estimated his bald tires spun for "a good five to thirty seconds"

---

[1] The record indicated a fourth person may have been at the scene.

before the Oldsmobile started moving forward. As he started speeding away Guillen heard gunshots coming from behind him and believed T.B. had fired the gun:

> Because I saw him with a gun in his hand and then when you put the—where it came through the window and how it came through the window and he got me in the arm and how it got [B.H.] in the hand, you can tell it's from that spot.

Guillen did not believe T.B. would have had time to pass the gun to J.C. or I.M. during the few seconds Guillen spun his tires.

A bullet passed through Guillen's back and exited his chest a few inches from his heart. He went to a local hospital and was flown by helicopter to Mercy Hospital in Des Moines. B.H. was shot in the hand, suffering a chipped knuckle and ligament damage requiring two surgeries.

The State filed a delinquency petition alleging T.B. committed attempted murder, intimidation with a dangerous weapon, and going armed with intent. After a September 2015 trial, the juvenile court adjudicated T.B. as delinquent on all three counts and ordered him to the state training school. He now appeals.

We review delinquency proceedings de novo. *In re A.K.*, 825 N.W.2d 46, 49 (Iowa 2013). Despite our de novo review, we give weight to the factual findings of the juvenile court, especially as to witness credibility, though we are not bound by them. *Id.*

The State bears the burden of proving beyond a reasonable doubt that the juvenile committed the delinquent acts. Iowa Code § 232.47(10) (2015). T.B. argues on appeal that the State did not meet its burden. He contests only one element of the crimes—that he was the individual who fired the shots.

T.B. argues Guillen's identification of T.B. as the shooter cannot be believed because Guillen lied about other aspects of the events and did not remember all of the statements he gave to authorities while he was hospitalized.

"Determinations of credibility are in most instances left for the trier of fact, who is in a better position to evaluate it." *State v. Weaver*, 608 N.W.2d 797, 804 (Iowa 2000). The juvenile court recognized credibility as "a central issue in this case" and noted it "heard and observed the witnesses first-hand." The court then provided a detailed assessment of the credibility of all the witnesses involved with the shooting.

The court noted that T.B. attempted to discredit Guillen by pointing to his inconsistent statements on three points: (1) why he was in the area the night of the shooting and his connection with drug dealing, (2) Meek's presence at the shooting scene, and (3) B.H.'s ownership of a cell phone. But the court pointed out Guillen had been consistent in the most significant matter at stake—his identification of T.B. as the person he saw with the gun.

> [Guillen] has not wavered in his identification of [T.B.] as the person with the gun in his hand. [Guillen] has consistently stated that the shots came from the corner back window on the driver's side of the vehicle. [Guillen] has not changed "his story" as to the location and involvement of [I.M.] and [J.C.] the evening of the shooting. The court witnessed [Guillen's] demeanor and response to questioning in court and finds [Guillen's] description of events more credible than the description of events provided by [I.M.] and [J.C.]

The juvenile court also reasoned it was "not unexpected" Guillen would have trouble remembering details of interviews recorded at the hospital the morning of the shooting given the severity of his injuries. The court credited Guillen's testimony that T.B. did not have time to transfer the gun to either of his

compatriots. The court also concluded the angle of the shots fired indicated T.B. was the shooter.

After our de novo review of the evidence, we defer to the juvenile court's assessment of the witnesses' credibility and find substantial evidence to support the court's delinquency adjudications.

**AFFIRMED.**