**IN THE COURT OF APPEALS OF IOWA**

No. 16-0693
Filed March 22, 2017

**IN THE INTEREST OF Z.N.,**
**Minor child,**

**Z.N., Minor child,**
     Respondent-Appellant.

_____

Appeal from the Iowa District Court for Plymouth County, Robert J. Dull, District Associate Judge.

The juvenile appeals the juvenile court orders adjudicating him delinquent for committing second-degree sexual abuse and placing him in the state training school. **AFFIRMED**

Zachary S. Hindman of Mayne, Arneson, Hindman, Hisey & Daane, Sioux City, for appellant.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

Z.N. appeals his delinquency adjudication based on a finding he committed second-degree sexual abuse, in violation of Iowa Code section 709.3(1)(B) (2015), by having sexual contact with an individual under the age of twelve.

**I. Background Facts and Proceedings.**

K.K., the complaining witness, was born in July 2003 and was approximately twelve years old at the time of the delinquency adjudication hearing and four years old at the time of the first instance of abuse. Z.N. was born in 1998 and was approximately seventeen years old at the hearing and nine years old at the time of the first instance of abuse.

K.K. and Z.N. met as children because their parents were family friends. On multiple occasions, the parents would get together at Z.N.'s house and the children would play in the basement. In April 2015, K.K. wrote a letter to her school counselor reporting that Z.N. sexually abused her multiple times in the basement of Z.N.'s home between 2008 and 2011. At trial, K.K. could not recall the exact amount of instances of abuse but estimated it was approximately six times. The record indicates a divorce between K.K.'s parents reduced the amount of contact between K.K. and Z.N., and in late 2011, the abuse presumably stopped.

On June 24, 2015, a delinquency petition was filed alleging Z.N. committed sexual abuse in the second degree by engaging in a sex act with a child under the age of twelve between January 1, 2013 and July 2014. In October 2015, the State amended the petition by changing the dates of the

alleged abuse to include the periods between April 1, 2008, and December 31, 2011. Z.N. resisted the amendment claiming unfair prejudice because it was untimely. The trial court granted the amendment and set trial for November 24, 2015. After multiple continuances, the trial was held on January 6, 2016.

At trial, K.K. testified about the sexual abuse that took place when she was four to eight years old. She stated, beginning in the summer of 2008, while K.K. and Z.N. were in the basement and the adults were upstairs at Z.N.'s house, Z.N. asked her on multiple occasions to go in the closet and touch his penis with her hands and mouth.[1] K.K. testified that although she does not remember exactly how many times Z.N. asked her to touch his penis with her mouth and hand, she thought it happened approximately six times between 2008 and 2011. On cross-examination, the defense focused largely on details surrounding the abuse, including what items were in the closet at the time of the abuse, what was said at the time of the abuse, and what other people were doing while Z.N. was asking her to touch his penis. K.K. had some difficulty recalling all of the peripheral facts. K.K.'s mother also testified at trial. She stated that on multiple occasions, K.K. did not want to go downstairs to play with Z.N.[2]

In its February 2016 order, the court adjudicated Z.N. delinquent for committing sexual abuse in the second degree. The court held a dispositional hearing in April 2016 and ordered the transfer of guardianship to the Iowa Department of Human Services (DHS) for placement in the state training school. Z.N. appeals the delinquency adjudication and the dispositional order.

---

[1] K.K. also testified that prior to these instances of sexual abuse, Z.N. kissed her at K.K.'s house. She did not recall if any sexual acts took place at that time.

[2] Z.N.'s mother testified that on occasion, K.K. would spend some time with Z.N.'s sister.

**II. Standard of Review.**

We review delinquency proceedings de novo. *In re A.K.*, 825 N.W.2d 46, 49–52 (Iowa 2013). We review issues of both law and fact under this standard. *In re D.L.C.*, 464 N.W.2d 881, 882 (Iowa 1991). Though we are not bound by them, we give weight to the factual findings of the juvenile court, especially regarding the credibility of witnesses. *A.K.*, 825 N.W.2d at 49. We presume Z.N. to be innocent, and the State has the burden of proving beyond a reasonable doubt that he committed the delinquent acts. *See Id.*

**III. Discussion.**

Z.N. raises two issues on appeal. First, he claims there is insufficient evidence to support the juvenile court's adjudication. Second, Z.N. claims he should not be placed in the state training school.

**a. Sufficiency of the Evidence.**

Z.N. concedes that K.K.'s testimony regarding Z.N.'s actions, if true, would constitute sexual abuse in the second degree.[3] However, Z.N. claims reasonable doubt exists based on the inconsistencies between K.K.'s trial testimony and her deposition testimony concerning the items in the room where the events took place, what K.K.'s brothers were doing at the time of the abuse, details about Z.N.'s genitalia, and the specifics of a residential remodel

---

[3] We agree K.K.'s testimony supports the elements of sexual abuse in the second degree. Sexual abuse in the second degree is committed when the offender performs a sex act upon a person who is under the age of twelve. Iowa Code §§ 709.1, 709.3(1)(b). According to the record, when K.K. was under the age of twelve, on approximately six occasions, Z.N. made K.K. touch his genitalia with her hands and mouth. Iowa Code § 702.17(2),(3) (defining "Sex act" as "[c]ontact between the mouth and genitalia . . . of one person and the genitalia or anus of another person," and "[c]ontact between the finger or hand of one person and the genitalia or anus of another person").

happening at the time of the abuse. Z.N. centers his argument on K.K.'s credibility.

In our de novo review, "we give weight to the factual findings of the juvenile court, *especially regarding the credibility of witnesses*." *A.K.*, 825 N.W.2d at 49 (emphasis added). We also note, "Corroboration of the testimony of victims shall not be required." Iowa R. Crim. P. 2.21(3); *State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998); *State v. Knox*, 536 N.W.2d 735, 742 (Iowa 1995).

The juvenile court states in its adjudicatory order:

> Having reviewed the evidence, observed K.K., and compared all of her statements, the court finds that her testimony is credible, and corroborated by prior statements and peripheral testimony. *There is, in fact, nothing in the record that causes this court any reasonable doubt as to the veracity of her statements/testimony*.

(emphasis added). We defer to the district court's finding regarding the credibility of K.K.'s testimony. K.K.'s testimony at trial was consistent as to the operative facts surrounding Z.N.'s molestation of K.K. *See State v. Mitchell*, 508 N.W.2d 493, 503 (Iowa) (finding minor inconsistencies in complaining witness's testimony overcome because "she never changed the operative fact that she and [the accused] had sexual intercourse"). Here, K.K.'s testimony was consistent as to the operative fact that Z.N. asked her to touch his genitalia with her hands and mouth on multiple occasions. At trial, she testified:

> Q. Did [Z.N.] ever do anything that made you feel uncomfortable? A. Yes
> Q. Can you tell the judge what that was. . . . A. Okay. Well, we'd be downstairs—like, if we were at their house we'd be downstairs and he would ask me if we wanted to play house, and I liked playing house, so said yes. And then he'd usually ask me if I wanted to go in the closet, and I felt like I had to say yes, so I said yes. And then he—and then he would ask me if I wanted to touch his penis, and I felt like I had to say yes, so I did, and—yeah.

. . . .
Q. Now, [K.K,] I believe you said that he asked you touch his penis? A. Yeah.
Q. Did you do that? A. Yeah.

Any inconsistencies are insufficient to overcome her consistent, credible testimony that Z.N. sexually abused her. *See id.*

Moreover, Z.N. exaggerates the inconsistencies in the record. Z.N. claims, for example, K.K. testified at a deposition that she had never seen male body parts before and argues this admission suggests she fabricated the events of the abuse.[4] Z.N., however, fails to point out the remainder of the deposition testimony where K.K. explains she was confused about the question and thought it specifically referred to whether she saw male body parts at her home.[5] In fact, the record reflects that many of the inconsistencies were based on K.K.'s confusion or misunderstanding of the questions.

The witness's consistent testimony at trial regarding the operative fact that Z.N. molested her is sufficient to carry the State's burden. We see no reason to upset the credibility determination of the district court, and we agree there was sufficient evidence to adjudicate Z.N. a delinquent for sexual abuse in the second degree.

**b. Placement in the State Training School.**

Z.N. next appeals the provisions of the dispositional order placing Z.N. at the state training school. He argues, based on expert testimony, the least

---

[4] In response to the State's argument that K.K.'s confusion and memory were the source of the inconsistencies, Z.N. maintains, "[T]he problems with K.K.'s testimony go far, far beyond simply stating that she cannot remember. Indeed, at [K.K.'s] deposition, K.K. testified that she had never seen a male body part before."
[5] K.K. was twelve at the time of the deposition, and she testified at trial that she was nervous. Z.N. was also present at the deposition.

restrictive dispositional order would place Z.N. in his mother's custody on probation in the community.

Under Iowa law:

> Pursuant to a hearing as provided in section 232.50, the court shall enter the least restrictive dispositional order appropriate in view of the seriousness of the delinquent act, the child's culpability as indicated by the circumstances of the particular case, the age of the child, the child's prior record, or the fact that the child has been placed on youthful offender status under section 907.3A.

Iowa Code § 232.52 (2016). The juvenile court may place guardianship of the child with the DHS for placement in the state training school "provided that the child is at least twelve years of age and the court finds the placement to be in the best interests of the child or necessary for the protection of the public . . . ." *Id.* § 232.52(2)(e).

Z.N.'s first contact with the juvenile courts began in 2009. Z.N. admitted to being a lookout for an incident related to a burglary complaint. Z.N. was also placed on probation for criminal mischief and theft. While on probation, Z.N. was adjudicated delinquent for a separate criminal mischief and theft complaint. Z.N. completed probation in September 2014.

Z.N. also encountered disciplinary issues in school. In middle school, he engaged in theft, criminal mischief, disruptive behavior, assault, skipping detention, harassment, insubordination, sexual harassment, pushing, disrespecting substitute teachers, and instigation. In high school, he struggled with attendance and performance. He has also received multiple disciplinary actions for possession of tobacco, insubordination, truancy, and negative behavior.

In its dispositional order, the juvenile court raised concerns over Z.N.'s ability to complete residential sex-offender treatment at home. The court reasoned Z.N.'s denial of the events, sexual history, and past disciplinary actions weigh against completing treatment at home. The juvenile court determined:

> [Z.N.] has remained sexually active since the dates of the adjudicated offenses. He has, in fact, fathered a child, and the sexual activity that resulted in that birth occurred when he was sixteen and investigation of the allegations in this matter were ongoing. These factors, in this Court's opinion, mitigate strongly against any unrestricted treatment plan of the type being recommended by [Z.N.'s experts].

The juvenile court acted within its discretion finding the least restrictive dispositional order, which is in the best interest of Z.N. and the public, includes placement at the state training facility. Z.N.'s expert reports are based on the assumption that Z.N. "potentially" committed sexual abuse and voluntarily stopped his abusive behavior at a younger age. The record reflects otherwise. Testimony suggests lack of opportunity, rather than choice, was the reason Z.N. stopped abusing K.K. For example, K.K.'s mother testified that contact between K.K. and Z.N. decreased because of a divorce. The record also indicates Z.N. fails to take responsibility for his behavior by denying the abuse took place and minimizing prior delinquent acts, disruptive behavior in school, poor attendance, insubordination, and school discipline. It is in Z.N.'s best interest to obtain residential treatment in the state training facility.

## IV. Conclusion

There was sufficient evidence in the record to adjudicate Z.N. delinquent for sexual abuse in the second degree. Furthermore, it is in Z.N.'s and the

public's best interest to maintain the dispositional order placing Z.N. at the state training facility.

**AFFIRMED.**