# IN THE COURT OF APPEALS OF IOWA

No. 17-0119
Filed February 7, 2018

## IN THE INTEREST OF D.M.,
Minor Child-Appellant.

_____

Appeal from the Iowa District Court for Scott County, Christine Dalton Ploof, District Associate Judge.

A juvenile appeals from her delinquency adjudication, claiming it was not supported by substantial evidence. **AFFIRMED.**

Patrick J. Kelly, Bettendorf, for appellant.

Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, Judge.**

The juvenile, D.M., appeals her adjudication as a delinquent, which was based on the court's findings she committed the delinquent acts of robbery in the first degree and willful injury resulting in bodily injury. She maintains there was insufficient evidence to support the court's findings, arguing there was no evidence she "intended to steal the property of [the victim] or . . . had the intent to assault or harm [the victim] in any way."

Delinquency proceedings are special proceedings that serve as an alternative to the criminal prosecution of a child, and we review them de novo. *In re A.K.*, 825 N.W.2d 46, 49 (Iowa 2013). "We presume the child is innocent of the charges, and the State has the burden of proving beyond a reasonable doubt that the juvenile committed the delinquent acts." *Id.*

*Willful Injury Resulting in Bodily Injury.* Pursuant to Iowa Code section 232.2(12)(a) (2016), a delinquent act is "[t]he violation of any state law or local ordinance which would constitute a public offense if committed by an adult." Section 708.4(2) makes it illegal to do "an act which is not justified and which is intended to cause serious injury to another . . . if the person causes bodily injury to another."

Here, D.M. maintains there was no evidence presented at trial that she physically participated in the "jumping" of the victim. She is correct, but this argument ignores the court's reliance on the principle of aiding and abetting in making its determination D.M. had committed the delinquent act.

The evidence presented at trial establishes that D.M., two codefendants, and the victim were spending the evening hanging out together in front of a local

YMCA, when the two codefendants acted together in repeatedly hitting the victim "everywhere"—including her head—until she fell to the ground. One of the codefendants then proceeded to stomp on the victim's head approximately four times. As the district court stated, "Stomping on a person's head while they are on the ground shows an intent to cause serious injury." *See State v. Taylor*, 689 N.W.2d 116, 132 (Iowa 2004) (considering "the principle that an actor will ordinarily be viewed as intended the natural and probable consequences that usually follow from his or her voluntary act"); *see also* Iowa Code § 702.18 (defining serious injury, in part, as a bodily injury "creat[ing] a substantial risk of death," "caus[ing] serious permanent disfigurement," of suffering "skull fractures"). Additionally, it is undisputed the victim sustained bodily injury. *See State v. Gordon*, 560 N.W.2d 4, 6 (Iowa 1997) (noting the court had adopted the Model Penal Code's definition of "bodily injury," which was "physical pain, illness, or any impairment of physical condition" (citation omitted)).

The victim testified that before the attack, she noticed D.M. and the two codefendants whispering and looking at her, causing her to feel uncomfortable and leading her to make a phone call to her mother asking to be picked up. Within a few minutes—before the victim's mother arrived—the first codefendant charged at the victim and hit her. This, combined with D.M.'s response to the assault—taking the victim's purse and running away while the victim was unable to stop or chase her—convinces us that D.M. "assented to or lent continence and approval to the" assault "by some manner encouraging it prior to or at the time of its commission." *State v. Spates*, 779 N.W.2d 770, 780 (Iowa 2010) (citation omitted).

There is sufficient evidence to support the juvenile court's finding that D.M. committed the delinquent act of aiding and abetting willful injury causing bodily injury.

*Robbery in the First Degree.* As relevant here, pursuant to section 711.2, "A person commits robbery in the first degree when, while perpetrating a robbery, the person purposely inflicts or attempts to inflict serious injury."

D.M. challenges the sufficiency of the court's ruling by relying on her own version of what took place. She relies on her testimony that she took the victim's purse only after the victim gave it to her and told her to run with it. But as the district court noted, D.M.'s testimony is not credible for several reasons. First, her statements about what took place were inconsistent with themselves—testifying that the victim dropped her purse before starting the fight, that the victim threw the purse to her after she hit one of the codefendants, and that the victim gave her the purse and asked her to hold it. Her testimony was also inconsistent with that provided by the worker from the YMCA. He testified that after the victim came in and told him she got jumped, he accompanied her outside and asked the three codefendants and the boy they were with if they knew what had just occurred or where the victim's purse was located; they responded they did not know what he was talking about and stated "nothing happened." On the other hand, D.M. testified that when the victim came out with the man who worked at the YMCA, the boy told the victim that her purse was in the bush. In her testimony, D.M. also denied removing the victim's phone from her purse, but this testimony is contradicted by the fact that the officers recovered the phone in the grass near

where they stopped the girls—a number of blocks from the YMCA where the altercation took place.

Because the credible evidence establishes that D.M. stole the victim's purse while her two cohorts assaulted the victim—punching her repeatedly and, after she fell to the ground, stomping on her head—substantial evidence supports the finding that D.M. committed the delinquent act of robbery in the first degree.

We affirm the juvenile court's adjudication of D.M. as a delinquent based on the findings she committed both delinquent acts of willful injury causing bodily injury and robbery in the first degree.

**AFFIRMED.**