# IN THE COURT OF APPEALS OF IOWA

No. 23-1386
Filed October 2, 2024

**IN THE INTEREST OF D.W.,**
**Minor Child,**

**D.W., Minor Child,**
        Appellant.
_____

        Appeal from the Iowa District Court for Johnson County, Joan M. Black, Judge.

        A juvenile challenges the sufficiency of the evidence to support his delinquency adjudication for second-degree sexual abuse.  **AFFIRMED.**

        Siobhan Briley of Pugh Hagan Prahm PLC, Coralville, for appellant minor child.

        Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

        Considered by Tabor, C.J., and Greer and Schumacher, JJ.

**TABOR, Chief Judge.**

The juvenile court adjudicated D.W. as delinquent for sexually abusing his younger stepsister, A.F. D.W. contests that adjudication, arguing that the State did not prove beyond a reasonable doubt that the girl's allegations were true. We reject his argument. The record shows that A.F. was consistent in recalling that D.W. persuaded her to engage in oral sex when she was six or seven years old. We thus find substantial evidence to support the adjudication.[1]

## I.      Facts and Prior Proceedings

D.W.'s father, Tony, was briefly married to Angela, who had three children of her own. Angela's daughter, A.F., was almost five years old when they moved in with Tony and his two sons. D.W. was about seven years older than A.F. The blended family lived together from the spring of 2016 through February 2020. Angela recalled that all the children "got along really well" at first. She described their household as "fun" with "a lot of chaos." But that cheery atmosphere changed. She and Tony fell into "an extremely toxic relationship"—in part because Tony did not appreciate Angela's concerns about D.W.'s callousness toward her two younger children, including A.F. Those children did not like to be alone with D.W.

---

[1] Delinquency adjudications are "special proceedings that serve as an alternative to the criminal prosecution of a child." *In re A.K.*, 825 N.W.2d 46, 49 (Iowa 2013). The goal of these proceedings is the best interests of D.W. *See id.* We review de novo D.W.'s challenge to the sufficiency of the evidence in his juvenile delinquency adjudication. *See In re T.H.*, 913 N.W.2d 578, 582 (Iowa 2018). We presume D.W. is innocent, and the State has the burden of proving beyond a reasonable doubt that he committed a delinquent act. *See A.K.*, 825 N.W.2d at 49; Iowa Code § 232.47(10) (2022). We give weight to the juvenile court's factual findings, especially when considering witness credibility, but we are not bound by them. *In re J.D.F.*, 553 N.W.2d 585, 587 (Iowa 1996).

because "he was mean to them." For instance, A.F. recalled D.W. calling her an "asshole" and other nicknames.

But that fraught situation seemed to resolve itself. After Tony and Angela split up, contact between the families ended. That is, until Angela was cleaning A.F.'s room about two years later. While making A.F.'s bed, Angela happened across a notebook that A.F. had been using as a diary. As she perused her daughter's hand-written entries, Angela discovered this disturbing passage:

> Next I will tell you about my deepest darkest secret so I had a stepbrother and he was a hourses ass and all the sudden one day he shows his dick to me and he says suck it, if you do I will be your best friend then . . . I don't want to talk about it.

By then ten years old, A.F. was not happy with her mother's invasion of her privacy. Angela remembers A.F. being embarrassed and angry when confronted with the diary entry. But A.F. acknowledged that those were her words and that D.W. had sexually abused her.

After this revelation, A.F.'s parents contacted law enforcement. As part of the investigation, A.F. participated in an interview at the child protection center (CPC). What she told the forensic interviewer reflected what she had written in the diary and later disclosed to her parents, as well as her stepsister and two friends.

The county attorney filed a delinquency petition charging D.W. with sexual abuse in the second degree, in violation of Iowa Code sections 709.1 and 709.3(1)(b) (2022). The petition alleged that

> [D.W.] did coerce A.F. into performing oral sex on him when she was between the ages of four and seven, and while he was between the ages of 11 and 14. This contact occurred while [D.W.] was babysitting for A.F. A.F. has reported that [D.W.] coerced her into performing the sex act by telling her if she sucked his penis, they could be "best friends." A.F. further stated at that age, she was

vulnerable to any person who told her to do something and it would mean they were "best friends." A.F. reported that her mouth made contact with [D.W.'s] penis.

The juvenile court set the matter for hearing in June 2023. A.F. testified that one day, when she was six or seven years old, she and D.W. were alone in their parents' bedroom when he pulled down his pants. He repeatedly asked her to "suck" his penis. She said that she didn't want to, but she "felt like if [she] didn't do it something [bad] would happen." A.F. also testified that D.W. promised to be her "best friend" if she complied, and she thought it was important for people to like her. So she put her mouth on D.W.'s penis.

D.W., then seventeen, took the stand and denied A.F.'s allegations. He also denied ever being alone inside the house with A.F. "for more than like a minute or two." But he did acknowledge that sometimes both of their parents would go to work and leave the children home alone.

In July 2023, the juvenile court adjudicated D.W. as a delinquent. The court found A.F.'s testimony to be credible and ruled that "the State has proven by evidence beyond a reasonable doubt that [D.W.] has committed the offense of sexual abuse in the second degree on one occasion by initiating contact of his genitals with the mouth of A.F." D.W. appeals that ruling.

## II. Analysis

To prove that D.W. committed second-degree sexual abuse, the State had to prove beyond a reasonable doubt that he engaged in a sex act with A.F. when she was under the age of fourteen. *See* Iowa Code §§ 702.5, 709.1, 709.3(1)(b). The definition of sex act includes contact between the genitalia of one person and the mouth of another person. *Id.* § 702.17(2). D.W. does not dispute A.F.'s age

at the time of the alleged sexual contact. But like he did in the juvenile court, D.W. outright denies that he ever engaged in a sex act with her.

In his appellant's brief, D.W. highlights what he believes are weaknesses in A.F.'s testimony. For example, he questions the logic of her testimony about the sexual contact, suggesting her account did not reflect the physiology of an erect penis. He notes: "[S]he testified that D.W.'s penis did not fill her mouth, did not make her gag or choke, and did not stop her from breathing." But, of course, the contact between body parts necessary to qualify as a sex act does not require an erection or ejaculation. *See In re E.H. III*, 578 N.W.2d 243, 248 (Iowa 1998) (noting accused's physical incapability of an erection "does not eliminate the possibility" sexual abuse occurred).

In another attempt to discredit A.F., D.W. points to testimony from her current stepsister, B.D., who recounted that A.F. confided that "D.W. kissed her and then they did stuff." A.F. denied that she mentioned kissing to B.D. But after our de novo review of the record, we do not find that slight variance to detract from A.F.'s credibility. *See A.K.*, 825 N.W.2d at 53. We also "consider the findings of the juvenile judge who heard the testimony and evaluated the credibility of the witnesses." *T.H.*, 913 N.W.2d at 583.

Like the juvenile court, we find the record supports A.F.'s allegations. She did not raise her claims with any ulterior motive in mind. In fact, A.F did not reveal the abuse to adults until her mother read her diary. The juvenile court provided this powerful summary:

> She has steadfastly maintained the truth of these revelations through the emotional gauntlet discussing it with her mother, her stepsister, the CPC interviewer, and finally, in the formality of the courtroom. At

no time did A.F. recant, which surely would have been an easier route.  Rather, she maintains the truth of these allegations.  Further, the Court notes no evidentiary indication whatsoever of any possible gain A.F. could obtain by maintaining false allegations.

A.F.'s credible testimony is, by itself, substantial evidence to sustain D.W.'s adjudication.  *See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998).  A.F.'s account was unwavering and corroborated by D.W.'s own testimony that their parents sometimes left them home alone.  A.F. also shared her "deepest darkest secret" with two school friends and her stepsister, as well as recording it in her diary.  These details bolster our credibility finding.

After our thorough review, we affirm the juvenile court's determination that D.W. committed a delinquent act that would constitute second-degree sexual abuse if he were an adult.

**AFFIRMED.**