# IN THE COURT OF APPEALS OF IOWA

--------------------

No. 25-0160
Filed January 7, 2026

--------------------

**In the Interest of K.K., Minor Child,**

**K.K., Minor Child**
Appellant.

--------------------

Appeal from the Iowa District Court for O'Brien County,
The Honorable Jessica Noll, Judge.

--------------------

**AFFIRMED**

--------------------

Tyler J. Alger of Sandy Law Firm, Spirit Lake, attorney and guardian ad
litem for appellant minor child.

Brenna Bird, Attorney General, and Genevieve Reinkoester and
Anagha Dixit (until withdrawal), Assistant Attorneys General, attorneys for
appellee State.

--------------------

Considered without oral argument
by Tabor, C.J., and Greer and Buller, JJ. Sandy, J., takes no part.
Opinion by Tabor, C.J.

1

**TABOR, Chief Judge.**

K.K. appeals his adjudication of delinquency, arguing the State offered insufficient evidence to show he committed sexual abuse in the third degree. Deferring to the juvenile court's credibility findings, we find sufficient evidence to affirm the adjudication.

## I.      Facts and Prior Proceedings

In 2023, sixteen-year-old Jane[1] and her extended family gathered at her grandparents' house to celebrate Christmas. About thirty people attended, including her cousin K.K., who was fifteen. The family members opened gifts, ate brunch, and spent time catching up.

Around 3:30 p.m., Jane went to her grandparents' bedroom to take a nap.[2] When she awoke, she realized: "Somebody was on top of me touching my butt and my boobs." From light shining into the room, she saw it was K.K. She was on her left side, and K.K. was behind her with his leg over her leg. He was under the covers with Jane. Ignoring Jane's pleas for him to stop, he began to pull her pants down. Jane tried to hold them up but was unsuccessful. Using one, then two fingers, he touched her inside and outside of her vagina. Jane testified, "It was rough. It, kind of, felt like nails on a

---

[1] The juvenile court order and the appellate briefs refer to the child victim as J.D. for Jane Doe. In this opinion, we use the anonymous first name, Jane.

[2] The home has three bedrooms and two bathrooms. One of the bathrooms is attached to the grandparents' bedroom. Those rooms are relatively isolated from the rest of the house, requiring occupants to travel through a mudroom, the laundry room, and an office.

chalkboard." At this point he was straddling her and put "pretty much all" his weight on her.[3] She testified: "I froze. I couldn't really do anything."

When the laundry room door opened, which the teenagers could hear from inside the bedroom, "he quickly got off and pretended to sleep." Their grandmother walked in, looked through a bookshelf, and left. Jane then grabbed her phone and glasses and went to the bathroom where she cried. Her phone showed it was 5:00 p.m. Jane's mother testified that she knocked on the bathroom door, and when Jane came out, her eyes were red and puffy.

That day, Jane didn't tell anyone what happened. But in February, fearing that she would see K.K. at an upcoming baptism, Jane confided in her guidance counselor. Jane testified she did not speak up sooner because: "I was afraid nobody would believe me and that I would ruin the family." Jane's mother noted changes in Jane's behavior after Christmas, such as retreating to her bedroom more often and letting her grades slip.

The juvenile court heard a different story from K.K. He denied any sexual contact with Jane. According to K.K., he went downstairs after the family opened gifts to build the Star Wars Lego set he received. But his younger cousins gave him a headache, so he went back upstairs. He asked to return to his uncle's house to rest, but his parents said they wanted him to spend more time with the family. So he looked for a place to lie down. Two bedrooms were occupied, leaving his grandparents' bedroom.

In K.K.'s version, he saw Jane on their grandparents' bed—awake and on her phone. He recalled telling her that he was "gonna lay down here for a bit." Without getting under all the covers, he did so, facing away from Jane.

---

[3] Jane was only five foot three inches tall. By comparison, K.K was six feet four inches tall and outweighed his cousin by more than one-hundred pounds.

K.K. testified that he and his cousin had napped together when they were younger. While they were resting, K.K. saw his grandfather come in and leave, then his father, and lastly his grandmother. Eventually, Jane went into the bathroom. A couple of minutes later, K.K. "rejoined the party."

At the adjudication hearing, the three adults who allegedly entered the room testified. K.K.'s father said that when he went in to use the restroom, both doors were closed. K.K. and Jane were on the bed facing away from each other and appeared to be asleep. He noticed K.K. was only under the bedspread, whereas Jane was under the sheets. Their grandfather testified that he did not recall entering the room, but that he generally tries to sneak in and out when he knows kids are asleep in there. Their grandmother testified that when she walked into the room, Jane and K.K. were lying in bed facing away from each other, both under the covers. The grandmother added that she was "surprised" to see the cousins in bed together and that K.K. looked like he was about to get up.

After the hearing, the juvenile court adjudicated K.K. to have committed sexual abuse in the third degree, a class "C" felony, in violation of Iowa Code sections 709.1, 709.4(1)(a), and 903B.1 (2023). The court found Jane was credible while K.K. was not. K.K. appeals.

## II.    Scope and Standard of Review

Juvenile delinquency proceedings are "special proceedings that serve as an alternative to the criminal prosecution of a child." *In re A.K.*, 825 N.W.2d 46, 49 (Iowa 2013). We review sufficiency of the evidence in delinquency proceedings de novo. *Id.* at 49–52. We give weight to the factual findings of the juvenile court, especially on witness credibility, but are not bound by them. *Id.* at 49.

4

## III.    Analysis

K.K. contends the evidence is insufficient to support his adjudication. The State carries the burden to prove beyond a reasonable doubt that K.K. performed a sex act by force or against Jane's will. *See* Iowa Code §§ 709.4(1)(a), 232.47(4). Upon our de novo review of the record, we find sufficient evidence to support K.K.'s adjudication.

K.K.'s grievances revolve around the juvenile court's consideration, or lack thereof, of three witnesses: the grandmother, the grandfather, and K.K.'s father. In its order, the juvenile court made quick reference to the testimony of those three witnesses, writing, "The other adults who testified were consistent with their testimony that [ Jane] and [K.K.] were in the bed together." K.K. believes the juvenile court failed to make a credibility finding for these witnesses and instead showed a "complete disregard for the evidence presented that contradicted the victim's claims." K.K. contends that once those three witnesses' testimony is properly addressed, there is insufficient evidence to support his adjudication.

We disagree with his contention. To start, the court was not required to make explicit credibility findings for each witness. Beyond that, the court did credit their testimony. They testified to walking into the room and seeing Jane and K.K. in bed together, and the court acknowledged that fact in its conclusions of law. Any additional credibility findings are implicit in the court's ultimate adjudication.

Still, K.K. insists that their testimony "directly contradicts" Jane's version of events. In his view, had the court credited those three witnesses, it could not have reached the same conclusion. In his sufficiency-of-the-evidence challenge, K.K. writes:

5

> At the end of the day, the heart of the issue remains. Potentially three individuals walked into the bedroom that day. Three individuals testified that they did not see any abuse of any kind occurring. Three individuals testified inconsistent with a finding of sexual abuse occurring by K.K. . . . The Court failed to analyze this evidence. With this evidence, the matter becomes clear, that the totality of the evidence does not support an adjudication.

In our de novo review, we disagree that "the matter becomes clear" when we consider the testimony of those three family members. As the juvenile court noted, factfinders "may choose to believe one witness and not another." *State v. Dalton*, 674 N.W.2d 111, 118 (Iowa 2004). So the juvenile court was free to disbelieve those witnesses.

What's more, those witnesses did not contradict Jane's testimony. True, none witnessed the sexual abuse. But that is consistent with Jane's testimony that K.K. stopped the assault and pretended to be asleep when they heard the laundry room door open. So that absence of corroboration is not surprising, nor does it cast reasonable doubt. At most, those family members passed through the bedroom for moments over the course of more than one hour, leaving much time unaccounted for. With so much time unaccounted for, K.K.'s contention that these witnesses directly contradict or are inconsistent with Jane's testimony is unavailing. *See In re T.M.*, No. 23-0353, 2024 WL 707191, at *2 (Iowa Ct. App. Feb. 21, 2024) (finding sufficient evidence of a sex act despite a step-grandmother walking through the room two to three times during a thirty- to forty-five-minute period in question).

And bolstering our deference to its factfinding, the juvenile court offered a convincing rationale for believing Jane's testimony.

> The court does believe that [Jane] was hesitant to disclose the abuse due to the concerns of the animosity it would cause within the family. [Jane]

was able to provide very detailed testimony regarding the events of December 25, 2023. There was no evidence presented that [she] had any animosity or motive to lie about the events on December 25, 2023. The only people present when the abuse occurred were [ Jane] and [K.K.]

Like the juvenile court, we find sufficient evidence to support K.K.'s adjudication.

**AFFIRMED.**