**IN THE COURT OF APPEALS OF IOWA**

No. 14-0852
Filed October 14, 2015

**IN THE INTEREST OF J.K.,**
    **Minor Child,**

**J.K., Minor Child,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Colin Witt, District

Associate Judge.


A teenager appeals a juvenile court determination that he is competent to

participate in delinquency proceedings.  **AFFIRMED**.


Brent Pattison of Drake Legal Clinic, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney

General, and John P. Sarcone, County Attorney, for appellee.


Considered by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, Presiding Judge.**

Teenager J.K. challenges a juvenile court order finding he did not overcome the presumption that he was competent to stand trial on several delinquency charges. J.K. contends the court erred in rejecting an expert opinion that he did not "appear able to assist counsel" in his defense. J.K. further argues the competency ruling violated his right to procedural due process by presuming children in his position are competent and requiring them to rebut that presumption.

Initially, we do not conclude that allocating the burden of proving incompetency to J.K. violated his right to procedural due process. Although the legislative branch could extend greater protections to children in competency proceedings, the juvenile court here afforded the basic procedural safeguards to J.K.—especially considering its application of the specialized juvenile competency definition from *In re A.B.*, No. 05-0868, 2006 WL 469945, at *3 (Iowa Ct. App. Mar. 1, 2006).

Further, like the juvenile court, we conclude J.K. failed to overcome the presumption of competency and establish he was incompetent by a preponderance of the evidence. Like the juvenile court, we are not convinced by the opinion of the psychological evaluator offered to rebut the presumption that J.K. was competent to participate in the delinquency proceedings. The evaluator was inexperienced; in her report she advocated for a presumption of incompetency at odds with the existing Iowa standard; she did not review pertinent parts of J.K.'s juvenile court and counseling history; she acknowledged

the results of her report should be viewed with caution given J.K.'s poor cooperation during the interview; and she acknowledged J.K. had "the capacity to learn the basic concepts necessary for competency" with help from his attorney. Considering these factors, as well as the countervailing evidence offered by the State, we reach the same conclusion as the juvenile court—J.K. could appreciate his charges, understand the proceedings, and assist effectively in his defense. Accordingly, we affirm the ruling on interlocutory review and remand for further proceedings.

## I. Background facts and proceedings

A decade ago at the age of five, J.K.—the youngest of nine children—left New Orleans with his parents to escape the toll of Hurricane Katrina. His family suffered loss and trauma as a result of the storm. When asked about his memories of Louisiana, J.K. recalled he "used to hear a lot of shootings and see a lot of fights." Beyond that statement, our record is thin on specific examples of what adversity J.K. faced in his early years.

J.K.'s middle school years have been difficult. According to a report by his juvenile court officer (JCO), J.K. had twenty delinquency referrals between August 2011 and August 2014. When J.K. was just ten years old, he joined three other juveniles in harassing and assaulting a disabled man at a farmer's market near Drake University. The boys, who were riding bicycles, surrounded the man's motorized wheelchair and slapped him in the head while he pleaded with them to stop. The boys rode off when onlookers called police. Charged with the delinquent act of third-degree harassment, J.K. entered an informal adjustment

agreement on August 29, 2011. As part of that agreement, J.K. wrote a letter apologizing to his victim; J.K. said he felt bad for what he did and was "now working on how to change [his] ways."

Despite expressing those sentiments, J.K. continued to engage in disruptive behaviors in school and had numerous run-ins with police in the community. School records reveal J.K. leveled threats and physical aggression against classmates and teachers. For instance, in October 2012 he pointed his finger at a teacher and "made noises and motions as if he were shooting." His individualized education plan (IEP) dated January 2013 indicated he exhibited "significant behavioral concerns in the school setting."

In late 2013, the State filed a series of delinquency petitions against J.K. On November 20, 2013, the State filed a petition alleging J.K. committed three counts of carrying weapons, in violation of Iowa Code section 724.4(1) (2013). The allegations involved neighbors calling police on October 27, after seeing juveniles threatening each other with guns in a city park; when police caught up with J.K., he allegedly had three CO2 BB guns concealed in his backpack.

On December 26, 2013, the State filed another delinquency petition alleging J.K. committed interference with official acts, in violation of Iowa Code section 719.1(1), and criminal trespass, in violation of Iowa Code sections 713.7(2)(a) and 716.8(1). These charges stemmed from a police investigation of a bicycle theft from a resident's front porch; J.K. allegedly ran from the responding officer and hid inside a stranger's vehicle.

On December 31, 2013, the State filed a delinquency petition alleging J.K. committed burglary in the third degree, in violation of Iowa Code sections 713.1 and 713.6A(1). The petition alleged that J.K. was one of several juveniles who broke into a house on December 30, 2013.

On January 6, 2014, the child's attorney filed a motion to continue the adjudication hearing set for January 17 and sought a competency evaluation by Dr. Stephanie Bruss. The motion noted the child's JCO had planned to request court approval for Dr. Bruss to conduct a psychological evaluation of J.K. The juvenile court granted the request for a competency evaluation.

On January 21, 2014, J.K. met with Dr. Bruss. She issued a fifteen-page, single-spaced psychological assessment of J.K. She concluded he was not competent to stand trial, summarizing her opinion as follows:

> At present, he does appear to have the capacity for a factual understanding of the court system and his charges, with sufficient education and assistance. However, he does not appear to have a rational understanding of the legal system or his charges, and does not appear able to assist counsel with a reasonable degree of rational understanding.

Two days before the competency hearing scheduled for April 11, 2014, the State filed yet another delinquency petition. This petition alleged J.K. committed theft in the fourth degree, in violation of Iowa Code sections 714.1(1) and 714.2(4), and harassment in the third degree, in violation of Iowa Code section 708.7(1). The charges arose from a shoplifting incident on March 24, 2014 during which J.K. and another juvenile allegedly took $325 in merchandise from a department store and gave false information to a police officer. According

to the police report, J.K. lied about his identity and told the investigating officer he currently lived in New Orleans and had taken a bus to visit his cousin in Iowa.

At the April 11 competency hearing, J.K.'s attorney objected to the State calling a psychiatrist to testify, alleging late notice of the witness. The State countered that it was not obliged to provide a witness list for the competency hearing but did so "to be fair." The juvenile court ruled: "I'm in agreement with the child's objection and am not going to allow a late-named psychiatrist to give an opinion on due process grounds." Accordingly, Dr. Bruss was the only witness to express a specific opinion on J.K.'s competency at the hearing. The State called two witnesses: Brian Ellis, a counselor for the Behavior Health Intervention Services (BHIS) who worked with J.K., and Amanda Proctor, who supervised J.K. through the Early Services Project (ESP) at Orchard Place.

The juvenile court entered its competency ruling on April 23, 2014. The court concluded J.K.'s evidence did not overcome the presumption of competency, reasoning:

> The Court is not confident from the evaluation report and from the testimony of Dr. Bruss that [J.K.] cannot, due to his immaturity or his trauma history, consult with his lawyer with a reasonable degree of rational understanding. [J.K.'s] responses during the evaluation evince sufficient rational and factual understanding of the proceedings against him. [J.K.'s] uncooperative behavior during the Evaluation significantly lessens the weight the Undersigned is able to give to the report and its recommendations. The Evaluation does not and the Child has not overcome the presumption of competency especially as applied to this Child and considering all circumstances and findings noted herein.

The child's attorney sought interlocutory review on May 22. The State filed a resistance. On June 27, 2014, the supreme court granted the child's

interlocutory appeal and stayed the juvenile court proceedings. After the parties filed their briefs, the supreme court transferred the case to our court on June 9, 2015.

## II.    Scope of Review

Delinquency proceedings serve as an alternative to the criminal prosecution of a child. *In re A.K.*, 825 N.W.2d 46, 49 (Iowa 2013). The objective of the juvenile court, and the appellate court on review, is to ensure an outcome that is in the child's best interests. *Id.* We review delinquency proceedings de novo, but give weight to the factual findings of the juvenile court. *In re D.S.*, 856 N.W.2d 348, 351 (Iowa 2014). We also review de novo decisions implicating a juvenile's constitutional rights. *Cf. State v. Lyman*, 776 N.W.2d 865, 873 (Iowa 2010) (applying de novo review to competency determination in criminal case).

## III.    Competency to Stand Trial in Delinquency Proceedings

J.K. contends because of his immaturity, borderline cognitive abilities, traumatic history, and impulsivity he is not competent to stand trial on his delinquency charges. He argues, first, that the juvenile court erred in rejecting his expert's opinion, and second, he alleges his right to procedural due process was violated by the court presuming he was competent and saddling him with the burden to overcome that presumption. We will address his arguments in reverse order, starting with the due process claim.

To frame both issues, it is helpful to consider the existing standards for competency to stand trial. The United States Supreme Court has long held a criminal defendant may not be required to stand trial unless he has "sufficient

present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (*per curiam*); *accord Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial"). The criminal trial of an incompetent defendant violates due process. *Medina v. California*, 505 U.S. 437, 453 (1994).

In Iowa, the test for competency in the criminal context is whether "the defendant is suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense." Iowa Code § 812.3(1); *accord State v. Lyman*, 776 N.W.2d 865, 874 (Iowa 2010). We presume a defendant is competent to stand trial; the defendant bears the burden of proving his or her incompetency by a preponderance of the evidence. *Lyman*, 776 N.W.2d at 874; *State v. Pederson*, 309 N.W.2d 490, 496 (Iowa 1981) (explaining under prior statute burden of proving competency was on defendant and holding rule was the same under chapter 812 "notwithstanding absence of an express statutory provision"). If the evidence is perfectly balanced, the presumption of competency prevails. *Lyman*, 776 N.W.2d at 874. In the criminal sphere, it does not violate due process to allocate to the burden of proving incompetency by a preponderance of the evidence to the defendant. *Medina*, 505 U.S. at 452; *see also Cooper v.*

*Oklahoma*, 517 U.S. 348, 369 (1996) (finding requirement that defendant prove incompetency by the heightened standard of clear and convincing evidence did violate due process).

Like an adult in a criminal proceeding, a juvenile facing the possible loss of liberty pending the outcome of delinquency proceedings is entitled to the "essentials of due process and fair treatment." *In re Gault*, 387 U.S. 1, 30 (1967) (holding juveniles were not guaranteed full spectrum of due process rights afforded in criminal court, but did enjoy right to notice of charges, to counsel, to confront and cross-examine witnesses and the privilege against self-incrimination). The United States Supreme Court has not expressly stated that juveniles have the due process right not to be adjudicated delinquent unless they are competent. But many state courts have done so. *See SWM v. State*, 299 P.3d 673, 676 (Wyo. 2013) (collecting cases).

In the only Iowa appellate case addressing competency to stand trial in a delinquency proceeding, our court interpreted due process to require the suspension of delinquency proceedings whenever a juvenile cannot appreciate the charge, understand the proceedings, or assist effectively in responding to the allegations. *In re A.B.*, 2006 WL 469945 at *3. We also recognized a presumption of competency and placed the burden on the juvenile to establish incompetency by a preponderance of the evidence. *Id. at *2.*

We determined in *A.B.* that Iowa Code section 812.3 "can and should be applied to delinquency proceedings." *Id.* at *3. The decision explained:

> For example, if it is proved that a juvenile is suffering from a "mental disorder" which prevents him or her from appreciating the

charge, understanding the proceedings, or assisting effectively in the defense, as provided in the statute, the court would be correct in finding the juvenile incompetent to stand trial.

But the *A.B.* decision did not limit competency determinations in delinquency cases to situations where the juvenile suffered from a mental disorder. *Id.* We held "that as a matter of due process of law the provisions of chapter 812 should not be applied to the exclusion of other relevant and applicable principles in determining competency in a delinquency proceeding." *Id.* We recognized "a juvenile's inability to appreciate the charge, understand the proceedings, or assist effectively in the defense may be the result of immaturity, lack of intellectual capacity, or both." *Id.*

## A. Presumption of Competency and Procedural Due Process

J.K. argues on appeal that applying a presumption of competency to a thirteen-year-old child violated his right to procedural due process.[1] Before addressing the merits of this argument, we turn to the State's threshold contention that the child's attorney did not preserve a constitutional argument in the juvenile court. At the end of its order, the court noted that the child's attorney had "asked rather perfunctorily" for a ruling on the constitutionality of the competency standards, but the court declined to find the presumption of competency to be a due process violation, opining that a trial-level judge was not in the position to create "new law." The juvenile court expressly acknowledged the issue was before it and then decided that issue adversely to the child;

---

[1] J.K.'s constitutional argument is premised on the fact he was thirteen years old when his competency was evaluated by Dr. Bruss. J.K. is now fourteen years old, and will be just a few months shy of his fifteenth birthday when the delinquency proceedings resume.

accordingly, we conclude the child preserved error on the due process issue. *See Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012).

Right out of the gate, the child's brief acknowledges "[t]here are no published state or federal cases discussing the constitutionality of applying a presumption of competency to a child."[2]  But J.K. nevertheless contends the juvenile court's application of the existing presumption violated his right to due process.[3]  J.K. argues *Medina*'s analytical approach to due process applied to the burden-of-proof question for adult competency decisions is not a good fit for juvenile delinquency cases.[4]  *See Medina*, 505 U.S. at 445–48 (applying two part test: 1) does presumption offend principle "so rooted in the traditions and conscience of our people as to be ranked as fundamental" and 2) does presumption violate fundamental fairness).  J.K. contends applying a presumption of competency to a child who is under the age of fourteen offends the tradition of presuming a lack of criminal capacity for young children.

The California Supreme Court recently rejected a similar argument, reasoning: "although some of the same considerations may be relevant to both

[2] An expert in juvenile law recently wrote: "The legal presumption used in virtually all juvenile delinquency cases in the U.S. is that all juveniles are competent to stand trial." David R. Katner, *Eliminating the Competency Presumption in Juvenile Delinquency Cases*, 24 Cornell J.L. & Pub. Policy 403 (2015) [subsequently cited as Katner].

[3] We read J.K.'s due process claim to be an as-applied challenge, rather than a facial attack on the presumption of competency as derived from chapter 812 and case law interpreting that provision.  *See State v. Hernandez-Lopez*, 639 N.W.2d 226, 235 (Iowa 2002) (discussing difference between facial and as-applied due process claims).

[4] J.K. advocates for analyzing the constitutionality of the presumption under the balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976).  We decline to do so.  The *Mathews* balancing test is generally used to determine whether a person has been afforded procedural due process in civil cases and is rarely applied in criminal or quasi-criminal contexts.  When it comes to criminal procedure, the due process question is more narrowly framed in terms of fundamental fairness.  *See State v. Becker*, 818 N.W.2d 135, 152 (Iowa 2012).

the question of competency to stand trial and the question of capacity to commit crime, these inquiries differ in their purpose and scope." *In re R.V.*, 349 P.3d 68, 79 (Cal. 2015) (holding policy arguments concerning presumption of incompetency were resolved by legislature). The *R.V.* decision found the presumption of competency for juveniles was not inconsistent with a presumption of incapacity that had been rebutted by the prosecution. *Id.* We agree with that reasoning.

Moreover, we find J.K.'s contention blurs the line between the prospect of punishing juveniles for their actions in criminal court and the unique purpose of juvenile delinquency proceedings recognized by the Iowa Supreme Court—"not to punish but instead to help and educate the child." *A.K.*, 825 N.W.2d at 51. Given the ameliorative aim of delinquency proceedings, we are not persuaded that imposing a presumption of competency on J.K. was fundamentally unfair.

Our determination that the presumption of juvenile competency was not fundamentally unfair to J.K. is bolstered by our court's previous recognition that developmental maturity and intellectual abilities should be considered in the juvenile competency determination. *A.B.*, 2006 WL 469945 at *3. Developmental maturity has been identified as a critical factor in evaluating a juvenile's competency to stand trial. *See* Katner at 418, 431 (discussing longitudinal study by the MacArthur Foundation on juvenile competence). In this case, the juvenile court considered Dr. Bruss's opinions concerning J.K.'s immaturity and impulsivity when reaching its competency decision.

We find no fundamental unfairness flowing from the presumption of competency in this case. The child's policy position is better addressed to the legislature. "Traditionally, due process has required that only the most basic procedural safeguards be observed; more subtle balancing of society's interests against those of the accused ha[s] been left to the legislative branch."[5] *Medina*, 505 U.S. at 453.

## B. Juvenile's Psychological Evaluation

Having decided the presumption of competency was not fundamentally unfair, we now address J.K.'s contention that he met his burden of proving incompetency by a preponderance of the evidence. J.K. asserts Dr. Bruss's evaluation and "unrebutted expert testimony" sufficiently established his inability to "assist counsel with a reasonable degree of rational understanding."

The juvenile court rejected Dr. Bruss's opinion that J.K. was not competent to stand trial "due to his immaturity or his trauma history." The juvenile court surmised that J.K.'s responses during the evaluation exhibited "sufficient rational and factual understanding of the proceedings against him." The court also gave less weight to the evaluation because of J.K.'s uncooperative behavior.

While we consider the evidence that was before the juvenile court anew, we nevertheless recognize that court's favorable vantage point for observing the testimony of the witnesses, as well as the demeanor of J.K. himself as the

---

[5] Indeed J.K. points to a national "trend toward developing juvenile specific competency statutes"—citing provisions from Maine and South Dakota which, in the case of a thirteen-year-old child, would place the burden of proving incompetency on the State. *See* ME. Rev. Stat. tit. 15 § 3318-A(8) (2014); S.D. Codified Laws § 26.7A 32.8 (2014).

juvenile interacted with his lawyer in the courtroom. *See A.K.*, 825 N.W.2d at 49 (noting deference to delinquency court on credibility issues). Under that structure of decision-making roles, we agree with the juvenile court's rejection of Dr. Bruss's recommendation. *See R.V.*, 349 P.2d at 911 (dismissing argument that juvenile courts should defer to court-appointed expert on competency unless there was clear reason not to do so, but also noting that opinion holds "special significance" in juvenile competency setting).

As an initial consideration, we look to Dr. Bruss's credentials.[6] Dr. Bruss received a doctorate in clinical psychology from Argosy University in August 2013 and had a post-doctoral fellowship with Innovative Learning Professionals L.C. and Polk County Juvenile Court Services at the time of the evaluation. She was not yet licensed as a psychologist in Iowa, so she worked under the supervision of Dr. David Beeman, who "reviewed and approved" her report. Dr. Bruss testified that during her fellowship she had performed approximately fifty juvenile psychological assessments, seven of which were competency evaluations. In only three of the seven competency evaluations did she find the juvenile was capable of standing trial. While Dr. Bruss's inexperience does not disqualify her as an expert, we do consider her newness to the practice in deciding the weight to give her conclusions. *Cf. State v. Belken*, 633 N.W.2d 786, 800 (Iowa 2001) (holding ability of an expert to perform accepted testing method affects weight of the evidence).

---

[6] For adult competency determinations, section 812.3(2) requires the defendant to undergo a "psychiatric" evaluation to determine whether the defendant is suffering from a mental disorder.

We also note the lengthy portion of Dr. Bruss's report devoted to public policy considerations. She rails against the legal system's failure to "sufficiently define the time period of adolescence." And she compares J.K's case to proposals from academic researchers,[7] stating J.K. "would be classified in the presumed incompetent, though rebuttable category." The juvenile court found her "recitations . . . regarding the 'failings' of the legal system would seem to be viable information to share with legislators or perhaps a court of higher authority," but "perhaps of less merit in an evaluation" prepared for the juvenile court. While Dr. Bruss understood the presumption of competency to be applied under Iowa case law, we find it significant in reviewing her recommendations that she chafed somewhat at doing so.

Moreover, in reaching her conclusion on J.K.'s competency, Dr. Bruss did not review his entire juvenile court file, did not consult with his counselor or other mental health providers, and did not obtain his mental health records—despite admitting such information would have been beneficial to her assessment. Dr. Bruss acknowledged obtaining J.K.'s counseling records "could have provided some good information about diagnostic considerations and amenability of the treatment and nature of his function in the past and with a counselor." Despite not having complete background information, Dr. Bruss noted J.K.'s diagnosis of oppositional defiance disorder and possibly attention-deficit/hyperactivity disorder. She reported J.K.'s "poor effort during the evaluation made it difficult to

---

[7] Dr. Bruss cites a study by Thomas Grisso, et al., *Juveniles' competence to stand trial: A Comparison of Adolescents' and Adults' Capacities as Trial Defendants*, Law and Human Behavior, Vol. 27, no. 4, 333–363 (2003), which advocates for a multi-tiered system for juvenile competency determinations.

adequately assess any trauma related symptoms. However, it is likely that his history of trauma has impacted his functioning."

In addition, as highlighted by the juvenile court, Dr. Bruss's findings were undermined by J.K.'s lackluster level of participation in the assessment. J.K. acted unenthused and irritable throughout his two-hour interview with Dr. Bruss. She observed him "slouched over in his chair for portions of the interview, despite attempts by his parents for him to sit up." At the start of the interview, J.K. said the information being requested was his "personal business" and nobody needed to know it. Dr. Bruss opined that J.K.'s cooperation improved slightly as her evaluation progressed, but "overall he appeared to put forth suboptimal effort during the evaluation process." In evaluating J.K., Dr. Bruss performed the Personality Assessment Inventory for Adolescents (PAI-A), which is designed to provide information relevant to clinical diagnosis, treatment planning, and screening for emotional difficulties. She opined: "given his poor cooperation throughout the evaluation along with the PAI-A validity scale results, [J.K.'s] resulting PAI-A profile should be considered with caution." We share the juvenile court's skepticism about Dr. Bruss's recommendation given her report's repeated caveats concerning J.K.'s lack of cooperation in the interview.

Most significantly, we do not view Dr. Bruss's findings regarding J.K.'s factual understanding and appreciation of his charges and the legal process as supporting her conclusion that he was not competent to stand trial. Dr. Bruss performed a Juvenile Adjudicative Competence Interview (JACI). Her report detailed many of J.K.'s responses to JACI questions. For instance, when asked

about the roles of the trial participants, J.K. stated the role of the county attorney was to "tell the judge he did it." J.K. described the role of the defense attorney as "finding evidence to help" him as well as "to see if police did anything they weren't supposed to." J.K. reported the judge "tells me my consequences," though he told Dr. Bruss that judges would know whether he was guilty by the way he walked into the courtroom and would consider the evidence only "if they want to." Dr. Bruss believed J.K. had a basic understanding of the attorney-client privilege and that his attorney would "keep it secret" if J.K. gave information to him. J.K. also reported "he liked his attorney and was able to work with him."

In further analyzing the JACI responses, Dr. Bruss questioned J.K.'s decision-making abilities based, in part, on his answer to a hypothetical question that he would prefer to take a plea bargain even if there was a good chance he would be found "not guilty" because it would mean he would be released from detention sooner. According to Dr. Bruss's report: "Overall, [J.K's] responses to the JACI indicated he lacks some basic knowledge about the legal system and his charges. However, he appeared to have the capacity to learn necessary information and concepts, with sufficient education and prompting." She also found his performance on the JACI suggested "he is capable of working with his attorney." Yet she added that—based on his plea bargain answer gravitating toward the immediate reward—"his capacity to participate in legal decision-making is questionable."[8]

---

[8] The State points out Dr. Bruss "offered no opinion on whether the child's parents could help him overcome any deficiencies regarding his communication with his attorney and legal decision-making. *See generally* Iowa Code § 232.38 (parents have a right to

Dr. Bruss asserted J.K.'s intellectual abilities[9] "appear adequate" to assist his counsel, but opined that his "psychosocial maturity" did not measure up to his cognitive development. She cited his "impulsive decision-making" as a deficit in his ability to "assist his attorney or to make legal decisions with a reasonable degree of rational understanding."

Dr. Bruss summarized her view on J.K.'s competency as follows:

> At present, he does appear to have the capacity for a factual understanding of the court system and his charges, with sufficient education and assistance. However, he does not appear to have a rational understanding of the legal system or his charges, and does not appear able to assist counsel with a reasonable degree of rational understanding.

Like the juvenile court, we reject Dr. Bruss's opinion that J.K. failed to appreciate his charges and the juvenile court process and would be unable to consult with his lawyer with a reasonable degree of rational understanding. The United States Supreme Court has described "a reasonable degree of rational understanding" as more than orientation "to time and place" and more than "functional competence." *Medina*, 505 U.S. at 457 n.1. But the *Dusky* standard does not require the accused to possess legal sophistication. *See United States v. Brown*, 669 F.3d 10, 17 (1st Cir. 2012) (holding the "understanding" required by *Dusky* is "of the essentials—for example, the charges, basic procedure, possible defenses—but not of legal sophistication."); *State v. Powers*, 537 P.2d 1369, 1378 (Idaho 1975) (explaining "standard of rational understanding

---

attend hearings), § 232.43(5)(c) (juvenile court may reject plea by child if parents object to it)."

[9] J.K. scored a 78 on the full scale IQ, which placed his general cognitive ability in the borderline range.

emphasized in *Dusky* must be taken to mean no more than that the defendant be able to confer coherently with counsel and have some appreciation of the significance of the proceeding and his involvement in it"). The *Dusky* standard is satisfied by J.K.'s capacity to consult lucidly with his attorney and to appreciate the basic concepts necessary to effectively assist in his defense.

Dr. Bruss also expressed concerns about J.K.'s uncooperative and argumentative nature during the interview. She opined "[t]his behavior could prove to be problematic in the courtroom." But the State's witness, ESP supervisor Amanda Proctor, testified that in the spring of 2013, she observed J.K. in juvenile court and he presented himself very well—"sitting quietly and listening." Proctor also testified that J.K.'s impulsivity was not unusual among the juveniles she supervised. Another State's witness, BHIS counselor Brian Ellis, also testified to seeing J.K. in juvenile court in connection with his earlier delinquency case and J.K. was "paying attention and answering questions as they were directed to him" in front of the same judge and with the same attorney for the child. The evidence at the competency hearing did not support Dr. Bruss's recommendation.

After reviewing all of the evidence, we agree with the juvenile court that J.K. did not meet his burden to establish incompetency by a preponderance of the evidence. Accordingly, we affirm the competency order and remand for the juvenile proceedings to resume.

**AFFIRMED.**