# IN THE COURT OF APPEALS OF IOWA

No. 16-2117
Filed January 10, 2018

**IN THE INTEREST OF
C.B., Minor Child,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, District Associate Judge.

A twelve-year-old child adjudicated delinquent for committing second-degree sexual abuse challenges the constitutionality of the statutory rape provisions. **AFFIRMED**.

Matthew S. Sheeley and Paul L. White, Assistant State Public Defenders, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**TABOR, Judge.**

Twelve-year-old C.B. repeatedly committed sex acts against his stepsiblings, who were five, eight, and ten years old. The juvenile court adjudicated him as a delinquent for sexual abuse in the second degree based on the age of the other children. C.B. alleges enforcing the strict liability provisions of Iowa's statutory rape statutes violated his right to due process. C.B. also contends those statutes are void for vagueness as applied to him. He further argues he was entitled to a jury trial.

Because C.B. identifies no defects in the juvenile court process, we decline to reverse on his procedural due process argument. In addition, C.B. fails to show the statute prohibiting sex acts with children under age twelve was unconstitutionally vague as applied to him. Finally, the right to jury trials in delinquency cases has already been foreclosed by our supreme court.

## I.      Facts and Prior Proceedings

In the fall of 2013, five-year-old D.S., eight-year-old D.B., and ten-year-old K.B. all reported that C.B., their twelve-year-old stepbrother, had subjected them to unwanted sexual contact. In the case of D.S., C.B. was babysitting when he placed the younger child's penis in his mouth and then C.B. inserted his penis into the five-year-old's rectum. C.B. warned D.S. not to tell their father, but the child soon revealed the incident to his grandfather. C.B. denied the allegations at first, but he eventually admitted to the contact, saying he was angry with D.S.

When two other stepsiblings, D.B. and K.B., learned they would not be seeing C.B. for a while because "he was in trouble for hurting a little boy," they disclosed to their mother that C.B. had also sexually assaulted them at their

grandmother's house. Eight-year-old D.B. recalled he and C.B. had been taking a bath together, they stood up in the tub, and C.B. inserted his penis into D.B.'s rectum, which was painful. K.B. reported that when she was ten years old, she and C.B. were in their grandmother's bed and C.B. "told her to pull her pants down" and to "lay sideways" before he inserted his penis into her rectum. K.B. planned to testify "this did not feel right to her." According to the minutes of evidence, C.B. also tried to insert his penis into her vagina and "his penis came into contact with her genitalia."

In February 2014, the State filed a delinquency petition, alleging five counts of sexual abuse in the second degree, class "B" felonies if filed in criminal court, in violation of Iowa Code sections 709.1 and 709.3(2) (2014), based on C.B.'s sex acts against those three children under the age of twelve. Two months later, C.B. filed a motion to dismiss the delinquency petition, alleging the strict liability provisions in Iowa Code chapter 709 violated his right to fundamental fairness ensured by the due process clauses of both the federal and state constitutions. He also alleged the statute was void for vagueness as applied to his situation. The State resisted. The juvenile court held a hearing on C.B.'s dismissal motion, accepting deposition testimony from expert witnesses offered by both sides.

In July 2014, the juvenile court denied the motion to dismiss. The court believed

> as the fact finder at trial, [it] could find that the Child committed sexual abuse under the specific intent offense of Iowa Code § 709.1(1) (the act is done by force or against the will of the other),[1] as well as under

---

[1] The juvenile court was mistaken in asserting sexual abuse was a "specific intent" offense. *See Lamphere v. State*, 348 N.W.2d 212, 217 (Iowa 1984) (classifying sexual abuse as a "general intent crime").

the strict liability offense of Iowa Code § 709.1(3) (the other person is a child), thereby rendering the Child's Constitutional arguments moot. . . . The child's motion to dismiss, therefore, is premature until such time as the State has presented its proof at trial.

C.B. filed a motion to enlarge and amend, arguing the State's delinquency petition limited the theory of adjudication to sexual abuse based on the age of the alleged victims and, as such, the adjudication violated his right to due process. The juvenile court denied C.B.'s motion to reconsider. C.B. unsuccessfully sought an interlocutory appeal on the due process questions. C.B. then demanded a jury trial, which the juvenile court rejected.

The parties stipulated to adjudication on the minutes of evidence, and C.B. renewed his motion to dismiss. The juvenile court penned a comprehensive and well-reasoned ruling denying the motion to dismiss.

In December 2014, the court suspended the proceedings and granted a consent decree, allowing C.B. to stay in his home and comply with the requirements of Woodward Academy's outpatient sexual offender treatment program. At the urging of C.B.'s juvenile court officer, in May 2015, the juvenile court decided C.B. needed a higher level of sexual offender treatment than was available in the community and placed C.B. in residential treatment. In December 2016, the juvenile court revoked the consent decree and adjudicated C.B., then fifteen years old, as having committed three delinquent acts of sexual abuse in the second degree in violation of Iowa Code sections 709.1(3), stating the "other person is a child," and 709.3(1)(b), stating the "other person is under the age of twelve." The court noted C.B. had been unable to complete the terms of the consent decree within the time frame permitted by section 232.46(4). The court

deferred placing C.B. on the sex offender registry because he remained in a residential facility.

C.B. filed a notice of appeal, challenging the delinquency adjudication and prior adverse rulings. C.B. asked our supreme court to retain his appeal under Iowa Rule of Appellate Procedure 6.1101(2)(a), (c), (d) and (f). But the supreme court transferred the case to us.

## II.      Scope and Standard of Review

We review both constitutional claims and juvenile delinquency proceedings de novo. *Formaro v. Polk Cty.*, 773 N.W.2d 834, 838 (Iowa 2009); *In re J.K.*, 873 N.W.2d 289, 293 (Iowa Ct. App. 2015). The objective of the juvenile court, and the appellate court on review, is to ensure an outcome that is in the child's best interests. *In re A.K.*, 825 N.W.2d 46, 49 (Iowa 2013).

## III.      Constitutional Challenges

The Due Process Clause "has a role to play" in juvenile delinquency proceedings. *In re Gault*, 387 U.S. 1, 13 (1967). Both the federal and state constitutions enshrine the right to due process of law. U.S. Const. amends. V, XIV; Iowa Const. art. I, § 9. These protections embrace two separate but related concepts—substantive due process and procedural due process. *State v. Russell*, 897 N.W.2d 717, 732 (Iowa 2017). Substantive due process prevents the State from interfering with "rights implicit in the concept of ordered liberty," while procedural due process constrains State action that infringes upon an individual's protected liberty or property interest. *Id.* at 732–33 (citation omitted).

On appeal, C.B.'s opening brief draws no distinction between the two concepts. But in his reply brief, C.B. clarifies he is raising only a procedural due

process claim. C.B.'s void-for-vagueness challenge to the strict liability provisions is also grounded in due process. *See State v. Nail*, 743 N.W.2d 535, 539 (Iowa 2007); *State v. Walker*, 506 N.W.2d 430, 432 (Iowa 1993) ("The root of the vagueness doctrine is a rough idea of fairness.").

The juvenile court adjudicated C.B. as delinquent for committing sexual abuse in the second degree in violation of Iowa Code sections 709.1(3) and 709.3(1)(b).[2] These sexual abuse provisions—commonly called statutory rape— are considered strict liability offenses because the State need only prove the age of the alleged victim rather than proving the victim's lack of consent to the sex acts. *See generally State v. Drake*, 219 N.W.2d 492, 494 (Iowa 1974) (discussing earlier version of statute). The provisions prohibit engaging in sex acts with a child under the age of twelve, regardless of whether the offender knew the child's age. *See State v. Tague*, 310 N.W.2d 209, 212 (Iowa 1981) ("Defendant plainly bears the full risk of his conduct."). Strict liability offenses pass constitutional muster if they are designed to "protect the public welfare." *See id. at* 211 (holding statutory rape provision did not violate due process rights of adult defendant). C.B. argues for a different result when both the alleged victims *and* the alleged perpetrator are children.

---

[2] Iowa Code sections 709.1(3) provides: "Any sex act between persons is sexual abuse by either of the persons when the act is performed with the other person in any of the following circumstances: . . . 3. Such other person is a child." Iowa Code section 709.3(1)(b) provides: "A person commits sexual abuse in the second degree when the person commits sexual abuse under any of the following circumstances: . . . b. The other person is under the age of twelve."

### A. Procedural Due Process

The first step in our procedural due process inquiry is to decide if a protected liberty or property interest is at stake. *State v. Seering*, 701 N.W.2d 655, 665 (Iowa 2005). The State concedes C.B. has a protected interest in the outcome of the delinquency proceedings. *See J.K.*, 873 N.W.2d at 294 (quoting *Gault*, 387 U.S. at 30) ("[A] juvenile facing the possible loss of liberty pending the outcome of delinquency proceedings is entitled to the 'essentials of due process and fair treatment.'").

The next step is to determine what process is due by balancing three factors: (1) the private interest impacted by the official action; (2) the risk of depriving the private party of that interest by the procedures used and the probable value of additional or substituted procedural safeguards; and (3) the State's interest and the burdens posed by adding or substituting procedural safeguards. *Seering*, 701 N.W.2d at 665 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). At a minimum, procedural due process calls for "notice and opportunity to be heard in a proceeding that is 'adequate to safeguard the right for which the constitutional protection is invoked.'" *Id.* at 665–66 (citation omitted).

C.B. focuses on "notice." He contends strict liability statutes do not give children adequate notice of the proscribed conduct because children are not "persons of ordinary intelligence."[3] He cites passages from the expert testimony offered in the juvenile court to support his position that he "did not possess the

---

[3] C.B.'s argument that children are not "persons of ordinary intelligence" for purposes of understanding the statutory rape provisions sounds more like a complaint about vagueness than a challenge based on procedural due process. Accordingly, we will address it in the next section of our opinion.

volitional control of an adult to refrain from engaging in sexual activities with children." C.B. points out that as a child himself, he belongs to "the very class of persons the law was enacted to protect." He asserts applying the strict liability provisions to him raises an "incongruous assumption" that at age twelve he was "too immature to legally consent to a sex act" yet "mature enough to be held liable under this same law."

Although C.B. casts his argument in terms of "notice," he is not actually advancing a procedural due process claim. Without dispute, C.B. had notice of the State's accusations against him, as well as an opportunity to be heard.[4] Instead, he contends he lacked the maturity to appreciate that committing sex acts on other children was prohibited. C.B. does not suggest any additional or substituted safeguards were necessary to ensure procedural due process in his case.

His assertion that the strict liability provisions create an "incongruous" situation when applied to a twelve year old seems troubling at first blush, but it does not withstand close consideration. In Iowa, children under age fourteen are deemed incapable of consenting to sexual activity. *See* Iowa Code §§ 709.3(1)(b), .4(1)(b)(2); *see also State v. Constable*, 505 N.W.2d 473, 475–76 (Iowa 1993) (discussing "legal fiction" that a child is incapable of consent and explaining, under statutory rape provision, sex act performed on child constitutes sexual abuse "regardless of whether that child understood the nature of the act, was forced to perform a sex act or submit to a sex act, or whether that act was against the child's

---

[4] C.B. also was consistently represented by skilled counsel who never raised a question of his competency to stand trial for adjudication of delinquency.

will"). But that legal fiction aimed at shielding youngsters from sexual activity does not immunize from all culpability the children who perpetrate sex acts on other children. Indeed, C.B.'s reply brief concedes "the evidence demonstrates that he willfully and deliberately forced his siblings to participate in sex acts," and such sex acts could legitimately be pursued as third-degree sexual abuse under the by-force or against-the-will alternative. *See* Iowa Code § 709.1(1). Accordingly, even C.B. acknowledges it is *not* "incongruous" to entertain the "legal fiction" that he could not consent to sex acts with another person while he may be held accountable for perpetrating sex acts against other children.

In sum, C.B. fails to show the juvenile court proceedings violated his right to procedural due process.

### B. Void for Vagueness

C.B. next argues Iowa Code sections 709.1(3) and 709.3(1)(b) are impermissibly vague when applied to him. In assessing whether statutes are void for vagueness, we presume constitutionality and give the provisions any reasonable construction to uphold them. *State v. Showens*, 845 N.W.2d 436, 441 (Iowa 2014). "The practical effect of holding a statute unconstitutional 'as applied' is to prevent its future application in a similar context, but not to render it utterly inoperative." *See Ada v. Guam Soc. of Obstetricians & Gynecologists*, 506 U.S. 1011, 1011 (1992) (Scalia, J., dissenting from denial of certiorari). The void-for-vagueness doctrine requires statutes to pass three tests: (1) they must give persons of ordinary understanding fair notice that certain conduct is prohibited; (2) they must offer authorities enough guidance to prevent the exercise of power in an arbitrary or discriminatory fashion; and (3) they cannot sweep so broadly as to

outlaw substantial amounts of constitutionally protected activities, such as speech protected under the First Amendment. *See Nail,* 743 N.W.2d at 539. The third concern is not raised here.

### 1. Fair Notice

C.B. first contends that at age twelve he was not "a person of ordinary understanding" and lacked the mental capacity to appreciate that certain acts were prohibited under the strict liability statutes.[5] In support of his position, he cites a special concurrence from a three-judge panel of the Ninth Circuit Court of Appeals. See *United States v. JDT,* 762 F.3d 984, 1014 (9th Cir. 2014) (Berzon, J., specially concurring) (agreeing sexual abuse statute defined criminal offense with sufficient definiteness that ordinary people could understand what conduct was prohibited but opining the "'ordinary people' standard takes on an air of unreality when applied to a ten year-old"). C.B. provides no other authority for his proposition that the standard for vagueness claims should be different in juvenile proceedings because children have a more limited comprehension of the law. Accordingly, we are compelled to apply the accepted fair-notice analysis—assuming the legislature must draft only with the precision to enable "a person of ordinary understanding" to realize what the statute prohibits. *See Williams v. Osmundson*, 281 N.W.2d 622, 625 (Iowa 1979) ("Literal exactitude or precision is not necessary.").

---

[5] On a practical level, the juvenile court rejected C.B.'s contention that he did not understand his actions were wrong. The court noted C.B. "waited until he was alone with the victims before engaging in the sexual contact" and "threatened that he would no longer be their friend if they told on him." C.B. also said he stopped because "he felt that his actions were wrong." He also tried to minimize and justify his actions when questioned by a professional and "relayed his fear about going to 'juvi' because of his actions."

"It is the statute, not the accusation under it, that prescribes the rule to govern conduct and warns against transgression." *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939). All who read a criminal statute are "entitled to be informed as to what the State commands or forbids." *Id.* Statutes give fair notice if their meaning can be fairly determined by relying on the generally accepted and common meaning of the words, or by referring to the dictionary or previous judicial constructions. *State v. Dalton*, 674 N.W.2d 111, 122 (Iowa 2004). On appeal, C.B. does not identify any specific words in the strict liability statutes that would confuse a person of ordinary understanding as to what actions were off limits. One definition of sexual abuse is a sex act performed with a child. Iowa Code § 709.1(3). A child is defined as a person under the age of fourteen. *Id.* § 702.5. Sexual abuse is elevated to the second degree if the child is under the age of twelve. *Id.* § 709.3(1)(b). Nothing about those provisions would leave a person of ordinary intelligence in doubt as to the forbidden conduct.

To the extent C.B. is contending he did not have the capacity to understand that committing sex acts with children under age twelve was wrong, his contention clashes with the tenet that "[a]ll persons are presumed to know the law." *See id.* § 701.6; *State v. Clark*, 346 N.W.2d 510, 512 (Iowa 1984). That presumption applies to juveniles so long as they are competent to be adjudicated delinquent. *See generally J.K.*, 873 N.W.2d at 296 (reiterating "developmental maturity and intellectual abilities should be considered in the juvenile competency determination"). Any diminished ability to comprehend the law is not a matter of fair notice.

2.      **Arbitrary Enforcement**

Although the vagueness analysis must address fair notice to the public, courts recognize "the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement"—as the more important aspect. *See Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (citation omitted). Relying on *In re D.B.*, 950 N.E.2d 528 (Ohio 2011), C.B. presents his most promising appellate argument here.

In *In re D.B.*, the Ohio Supreme Court decided its statutory rape law was unconstitutionally vague as applied to a twelve–year–old adjudicated delinquent for engaging in sexual conduct with an eleven–year–old. 950 N.E.2d at 530-33. The Ohio court reasoned:

> The facts of this case provide an example of the temptation for prosecutors to label one child as the offender and the other child as the victim. Based apparently upon the theory that D.B. forced M.G. to engage in sexual conduct, the state alleged that D.B., but not M.G., had engaged in conduct that constituted statutory rape.

*Id.* at 533. The Ohio court concluded the prosecutor's choice of which child to charge with a delinquent act constituted "the very definition of discriminatory enforcement." *Id.* The court emphasized "the concept of consent" played no role in its analysis of D.B.'s due process challenge because the statute at issue authorized strict liability based on the participants' ages. *Id.*

C.B. seizes on the Ohio court's reasoning and argues that when faced with a strict liability statute under which "a child may be both a perpetrator and a victim," the risk of arbitrary prosecution is "inherent." C.B. worries the prosecutor's "personal perception of the distinction between what is 'good, bad, and wrongful sex' among children" will be the impetus for enforcement of the statute. But C.B. identifies nothing about his own adjudication that would suggest a policy-driven

decision by the county attorney to file a delinquency petition against him rather than against his younger stepsiblings.

The State responds that "the exercise of prosecutorial discretion does not render a statute unconstitutionally vague." The State further suggests prosecutorial discretion may be even more important in juvenile delinquency proceedings where the need for effective rehabilitation of an offending child is of vital importance. *See generally State v. Lyle*, 854 N.W.2d 378, 388 (Iowa 2014) (recognizing the "juvenile justice chapter of our Code gives courts considerable discretion to take action in the best interests of the child").

After full consideration, we find C.B.'s arbitrary-enforcement argument does not live up to its initial promise. We are not persuaded by C.B.'s reliance on *In re D.B.*, as the Ohio court misframed the test when deciding its statutory rape provisions violated due process. *See* 950 N.E.2d at 533 (holding strict liability statute encourages arbitrary enforcement because either child participant could be in violation). We believe a more accurate reflection of void-for-vagueness jurisprudence appears in a juvenile appeal decided by the Minnesota Supreme Court, stating: "The essential constitutional problem with [vague] statutes is not that they fail to identify whom to prosecute or allow for enforcement against some violators and not others, but, rather, that their statutory vagueness lets enforcers define who is a violator in the first place." *In re B.A.H.*, 845 N.W.2d 158, 164 (Minn. 2014) (concluding statutory rape statute was not impermissibly vague as applied to a fourteen year old accused of sex acts with his thirteen-year-old cousin). The Minnesota court declined to follow *In re D.B.*, explaining the Ohio court "addressed neither why the charging decision was discriminatory nor, more fundamentally,

how the statute was vague." *Id.* at 164 n.4; *see also State v. Colton M.*, 875 N.W.2d 642, 648 (Wis. Ct. App. 2015) (finding analysis of *In re B.A.H.* more persuasive than the analysis of *In re D.B.*).

Iowa's statutory rape provisions do not leave it up to police, prosecutors, or courts to define who is a violator. *Contra Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (striking down loitering statute as unconstitutionally vague because it vested "virtually complete discretion in the hands of the police to determine whether the suspect ha[d] satisfied the statute"). Rather, the legislature designated persons who engaged in sex acts with children under twelve as offenders under section 709.3(1)(b). The prohibited conduct is well defined. The county attorney's exercise of discretion in filing a delinquency petition against twelve-year-old C.B.—the admitted aggressor in the sexual encounters with his five-, eight-, and ten-year-old stepsiblings—does not create a constitutional problem. Our de novo review of the evidence shows, from C.B.'s perspective the acts were sexual in nature, while from the perspective of three younger children, the acts were hurtful and offensive contact. These circumstances do not support C.B.'s contention that the provisions foster arbitrary enforcement. Accordingly, C.B. has not established the strict liability statutes are vague as applied to him.

### IV.    Jury Trial

As a final issue, C.B. argues he was entitled to a trial by jury at his juvenile delinquency adjudication under the due process and equal protection provisions of our state constitution. *See* Iowa Const. art. I, secs. 1, 6, 9, 10. Our supreme court rejected this argument forty years ago and has recently reaffirmed that position. *See In re Johnson*, 257 N.W.2d 47, 51 (Iowa 1977); *see also A.K.*, 825

N.W.2d at 51. As the intermediate appellate court, "[w]e are not at liberty to overrule controlling supreme court precedent." *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014).

**AFFIRMED.**