# IN THE COURT OF APPEALS OF IOWA

No. 17-1027
Filed May 2, 2018

**IN THE INTEREST OF I.M.,**
**Minor Child,**

**I.M., Minor Child,**
    Appellant.

_____

Appeal from the Iowa District Court for Webster County, Angela L. Doyle, District Associate Judge.

A minor child appeals the juvenile court's finding he committed the delinquent acts of attempted murder and going armed with intent. **AFFIRMED.**

Derek J. Johnson of Johnson, Bonzer & Barnaby, P.L.C., Fort Dodge, for appellant.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Considered by Vogel, P.J., and Doyle and Bower, JJ.

**BOWER, Judge.**

I.M. appeals the juvenile court's finding he committed the delinquent acts of attempted murder and going armed with intent. Upon our de novo review, we find the State has shown beyond a reasonable doubt I.M. committed the delinquent acts of attempted murder and going armed with intent. We affirm the juvenile court's decision.

## I.     Background Facts & Proceedings

On November 28, 2016, Robert Rivers Jr. was standing on the front porch of the home of his mother, Sharon Altman, in Fort Dodge when his nephew, I.M., who was then thirteen years old, fired three shots at him with a .38 caliber revolver. One of the bullets grazed Rivers's ear and another lodged in his chest. Shortly after the shooting, Detective Larry Hedlund of the Fort Dodge Police Department spoke to Rivers at the hospital. Rivers told Detective Hedlund I.M. shot him.

After shooting Rivers, I.M. ran to the home of J.K., where I.M. stated he had gotten in a fight or argument with someone and something bad happened. I.M. asked J.K. to get rid of a gun. J.K. wrapped the gun in a shirt and hid it in his closet. Officers later conducted a search of the home on an unrelated matter and found the gun.[1] After the gun was discovered, J.K. told Detective Hedlund I.M. stated he had gotten into an argument with Rivers about "half a blunt."[2] J.K. also stated I.M. told him he had shot Rivers. I.M. was wearing a black sweatshirt when he came to J.K.'s home and was out of breath from running.

---

[1] Officers obtained a search warrant for the home in relation to a narcotics investigation concerning J.K.'s brother. The officers found a .38 caliber revolver in J.K.'s bedroom closet.

[2] A blunt is a slang term for a cigar stuffed with marijuana.

David Dutcher was working for the Fort Dodge Water Department near Altman's home and heard three shots. He looked up and saw two males arguing. One man, who was wearing a black sweatshirt or hoodie, was standing on the sidewalk and then ran to the north. Donovan McDonald, who was visiting Altman's home that day, stated, "[T]he family was arguing." He stated the shots were fired about forty-five minutes after the argument. Officers retrieved two bullets from Altman's porch. Analysis by the Iowa Division of Criminal Investigation showed the .38 caliber revolver found in J.K.'s closet fired the bullets found at the crime scene.

The State filed a petition alleging I.M. engaged in the delinquent acts of attempted murder, in violation of Iowa Code section 707.11(1) (2016), and going armed with intent, in violation of section 708.8. At the hearing on the petition, Rivers and J.K. testified they could not remember anything about their conversations with Detective Hedlund. The court heard recordings of the two being interviewed under Iowa Rule of Evidence 5.803(5). The juvenile court concluded I.M. committed the delinquent acts of attempted murder and going armed with intent. He was placed in the State Training School for Boys. I.M. appeals his adjudication as a juvenile delinquent.

## II.  Standard of Review

"Juvenile delinquency proceedings are not criminal prosecutions, but are special proceedings that serve as an ameliorative alternative to the criminal prosecution of children." *In re J.D.F.*, 553 N.W.2d 585, 587 (Iowa 1996). "Juvenile delinquency proceedings are reviewed de novo." *In re S.M.D.*, 569 N.W.2d 609,

610 (Iowa 1997). We give weight to the factual findings of the juvenile court but are not bound by them. *J.D.F.*, 553 N.W.2d at 587. Our objective "is to ensure an outcome that is in the child's best interests." *In re J.K.*, 873 N.W.2d 289, 293 (Iowa Ct. App. 2015).

### III. Sufficiency of the Evidence

In juvenile delinquency proceedings, "[w]e presume the child is innocent of the charges, and the State has the burden of proving beyond a reasonable doubt that the juvenile committed the delinquent acts." *In re A.K.*, 825 N.W.2d 46, 49 (Iowa 2013). Upon our de novo review, we examine the evidence to determine whether the State has proven beyond a reasonable doubt the child violated a statute. *See In re D.S.*, 856 N.W.2d 348, 352 (Iowa 2014).

**A.** I.M. claims the State did not present sufficient evidence to show he committed the delinquent act of attempted murder. Section 707.11(1) provides:

> A person commits the offense of attempt to commit murder when, with the intent to cause the death of another person and not under circumstances which would justify the person's actions, the person does any act by which the person expects to set in motion a force or chain of events which will cause or result in the death of the other person.

I.M. claims the State did not present substantial evidence to show he had "the intent to cause the death of another person." *See* Iowa Code § 707.11(1).

The offense of attempted murder requires (1) a specific intent to cause the death of another and (2) an overt act in furtherance of the required specific intent. *State v. Young*, 686 N.W.2d 182, 185 (Iowa 2004). "Intent is 'seldom capable of direct proof,' however, and 'a trier of fact may infer intent from the normal consequences of one's actions.'" *State v. Evans*, 671 N.W.2d 720, 724–25 (Iowa

2003) (citation omitted). Specific intent may be inferred from the facts and circumstances surrounding a defendant's actions. *State v. Most*, 578 N.W.2d 250, 254 (Iowa Ct. App. 1998).

The State presented evidence to show I.M. had been in an argument with Rivers before the shooting. J.K. told Detective Hedlund I.M. stated he had gotten into an argument with Rivers about "half a blunt." Dutcher, who was working near Altman's home at the time of the incident, testified he saw two males arguing at the time he heard the shots. He stated the male who was standing on the sidewalk yelled something at the other man and his tone was angry. Furthermore, McDonald, who was visiting Altman that day, testified "the family was arguing" about forty-five minutes before the shots were fired. I.M.'s intent to cause the death of Rivers can be inferred from evidence I.M. and Rivers were engaged in an argument and I.M. fired three shots at Rivers, two of which struck Rivers. *See State v. Wilkins*, 346 N.W.2d 16, 20 (Iowa 1984) ("When a person intentionally uses a deadly weapon in killing a victim, the jury may infer that he had formed the specific intent to kill.").

We find the State has shown beyond a reasonable doubt I.M. committed the delinquent act of attempted murder.

**B.** I.M. also claims the State did not present sufficient evidence to show he committed the delinquent act of going armed with intent. Section 708.8 provides, "A person who goes armed with any dangerous weapon with the intent to use without justification such weapon against the person of another commits a

class 'D' felony." I.M. claims there is insufficient evidence to show the "going" or movement element of going armed with intent.

The offense of going armed with intent "necessarily implicates proof of movement." *State v. Ray*, 516 N.W.2d 863, 865 (Iowa 1994). The movement does not need to be over a great distance. *See State v. Harris*, 891 N.W.2d 182, 187 (Iowa 2017) (finding evidence defendant carried a knife from inside a bar to outside was sufficient to meet the "going" element); *State v. Pearson*, 804 N.W.2d 260, 265 n.1 (Iowa 2011) (noting evidence the defendant carried a weapon across a kitchen was sufficient).

Dutcher saw a male standing outside the home, on the sidewalk, arguing with someone on the porch. We can deduce I.M. traveled to the sidewalk from somewhere else while carrying the .38 caliber revolver used to shoot Rivers. There was no evidence anyone else was standing near I.M. who could have given him the gun. In fact the evidence shows that I.M. returned to the home where the earlier argument took place while armed. We find the evidence shows I.M. engaged in movement while armed with the gun, with the intent to use the gun against Rivers.

We find there is evidence beyond a reasonable doubt to show I.M. engaged in the delinquent act of going armed with intent.

We affirm the juvenile court's decision finding I.M. committed the delinquent acts of attempted murder and going armed with intent.

**AFFIRMED.**